## UNITED STATES DISCTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:17-CV-14302-ROSENBERG/MAYNARD

DENNIS MCWILLIAMS, et al.,

       Plaintiffs,

vs.

NOVARTIS AG, et al.,

       Defendants.

_____/

### JOINT SCHEDULING REPORT

Pursuant to the Court's Order dated September 19, 2017 (Doc. No. 7) and Local Rule 16.1(b), Plaintiffs and Defendant Novartis Pharmaceuticals Corp. ("NPC") hereby submit their Joint Scheduling Report.  NPC has filed a motion to dismiss pursuant to Rule 12(b)(6) for a failure to state a claim upon which relief can be granted (Doc. No. 15).  Plaintiffs are filing an Amended Complaint today.  A separate defendant, Novartis AG, has not yet been served or appeared in this case.[1]

---

[1] NPC proposes dates certain in this joint report even though the parties have not all appeared or filed answers.  In the event that the issues raised in any motions to dismiss are not resolved or the parties fully joined and served within 60 days, NPC requests that the Court extend the deadlines accordingly.  NPC also requests that the Court stay discovery until after any motions to dismiss are resolved and all parties have answered the Complaint. There is a co-defendant that has not yet been served.  And NPC has not yet had the opportunity to review plaintiffs' Amended Complaint, but anticipates that it likely will file a motion to dismiss that will, at a minimum, reassert its request to dismiss plaintiffs' punitive damages relief.  The scope of relevant discovery in the case depends what plaintiffs' claims are (i.e., the relevant time period and whether punitive damages are potentially available as a matter of law).  Plaintiffs oppose both requests.  No good cause exists to depart from the general rule that pending motions do not stay pre-trial activities, and NPC's request in this footnote does not constitute a proper motion to stay. The bulk of NPC's motion to dismiss addresses the viability of punitive damages, and there is no

I.      **Conference Report**

A.      **Likelihood of settlement**

The parties are open to the possibility of resolution but are unable at this time to assess the likelihood of settlement.  Plaintiffs have indicated a willingness to provide a demand but have not yet done so.

B.      **Likelihood of appearance of additional parties**

The appearance of additional parties other than those named in the caption is unlikely. Defendant Novartis AG has not appeared yet, and NPC will not be able to determine whether there are other parties to be added until it conducts discovery.

C.      **Proposed limits on the time:**

Plaintiffs request that the Court place this case on the Standard Track.  No good cause exists to depart from the **August 20, 2018 Trial Date** set forth in the Court's September 19, 2017 Order (Doc. No. 7), or Local Rule 16.1(a)(3)'s expectation that a majority of cases will be assigned to the Standard Track.  Plaintiffs oppose NPC's request for the maximum Complex Track schedule or the maximum Standard Track schedule.  Plaintiffs' proposed Standard Track schedule allows 184 days for the completion of discovery.

NPC requests that the Court place this case on the Complex Track pursuant to Local Rule 16.1(a)(3) and proposes the deadlines noted below based on the 270 to 365 days allowed for discovery following the entry of a scheduling order.  Under the Complex Track and NPC's proposal, the deadline to complete all discovery would be approximately October 18, 2018 (assuming the entry of a scheduling order on October 18, 2017), **with trial to be set on or after**

---

pending or contemplated motion that will obviate the need for discovery.  Proceeding with the discovery is in all parties' best interest in obtaining a swift and just resolution of this matter.

**February 15, 2019** (120 days after the close of discovery).[2]  In the event that the Court

determines this case should be placed on the Standard Track, NPC requests that the Court enter a

schedule allowing the 269 days for the completion of discovery allowed by Local Rule

16(a)(2)(C).

The parties' positions are set forth in detail below, including in Sections I.C.iii, I.I and

II.A, as well as in NPC's attached affidavit pursuant to Local Rule 7.6 (Exhibit 1).

### (i)    To join other parties and to amend the pleadings

Plaintiffs propose **December 13, 2017,** which is within 60 days following entry of the

scheduling order, the presumptive deadline set by the Court's Order.  NPC reserves its right to

name additional parties based on information obtained during discovery and to file a responsive

pleading after the resolution of any motions to dismiss.

### (ii)    To file and hear motions

Plaintiffs propose that dispositive pretrial motions and *Daubert* motions be filed by **May**

**22, 2018,** which is 90 days prior to trial, the presumptive date set by the Court's Order.  NPC

proposes that dispositive pretrial motions and *Daubert* motions be filed by **October 18, 2018,**

which is 120 days prior to trial.  NPC proposes that these motions be filed in advance of the

Court's anticipated deadline of 90 days prior to trial (*see* ECF No. 7 at Section 2) in order to

allow the Court additional time to resolve these motions, as well as to conduct a *Daubert*

evidentiary hearing that NPC anticipates requesting.  NPC proposes that motions *in limine* and

any other pretrial motions be filed by **November 16, 2018,** which is the last business day over 90

days prior to trial.

---

[2] To allow adequate time for pretrial motions in this case, NPC has requested that the close of discovery be moved
30 days *earlier*, to September 18, 2018.  *See* Section I.C.iii.  The result would be that discovery closes 150 days
before trial, but the trial date would be no later than it would be under the Complex Track designation with a
discovery period of 365 days.

       **(iii)**     **To complete discovery**

Plaintiffs propose **April 20, 2018**, which is the last business day over 120 days prior to trial, the Court's presumptive deadline under its Order.  NPC proposes **September 18, 2018**, which is 150 days prior to trial under a Complex Track designation, to allow sufficient time for pretrial briefing in advance of trial.  NPC notes that in *Lauris et al. v. Novartis AG, et al.,* No. 1:16-cv-00393-SHE (E.D. Cal.), which Plaintiffs have designated as a "Related Case" on their initial Civil Cover Sheet (ECF No. 1-1), trial is set for January 23, 2018.  In *Lauris*, the Plaintiffs, represented by counsel here, assert similar product liability claims involving Tasigna®. Under the schedule that Plaintiffs seek here, all fact discovery as well as the process of retaining and preparing initial expert reports, would have to be commenced and largely completed during the same time that the parties in *Lauris* are making final trial preparations and conducting trial (and by counsel who will be involved in that trial), and, as Plaintiffs point out, all discovery (which includes both fact and expert discovery) would have to be completed in its entirety in the two months after the *Lauris* trial.  Thus, the entry of a schedule in which discovery is focused during the same period as the *Lauris* trial is not feasible, and the Court should adjust the schedule accordingly, especially given Plaintiffs' identification of purported relatedness of these cases.

Plaintiffs oppose NPC's request for 11 months of discovery in a case that, as noted above, largely involves overlapping issues that have already been the subject of discovery in the *Lauris* case.  While specific causation issues are unique to the particular Plaintiffs in this case, the parties agree that the vast majority of discovery conducted in *Lauris* is likewise applicable to this case, including the documents already produced by Novartis and the depositions conducted by the parties.  Six months is more than sufficient to obtain Dennis McWilliams' medical records and conduct any additional discovery.  Further, general issues such as general causation and

labelling issues will likely be covered by the same experts already disclosed and deposed in the *Lauris* action.  To facilitate expedited discovery, Plaintiffs have offered to give Novartis appropriate medical releases without awaiting a discovery request.  Moreover, the *Lauris* trial has no bearing on the feasibility of this schedule.  Novartis has multiple sets of counsel in both the *Lauris* action and this one, and is accustomed to litigating multiple matters regarding the same drug at once.  Further,  Plaintiffs' proposed fact discovery deadline is not until over two months after the end of the *Lauris* trial.

> **D.    Proposals for the formulation and simplification of issues, including the elimination of frivolous claims or defenses, and the number and timing of motions for summary judgment and partial summary judgment**

To streamline the litigation and eliminate unnecessary issues of proof, the parties propose that:

- The parties have seven days after the exchange of exhibit lists to raise authenticity objections.  If no objection is lodged prior to that time, authenticity objections are waived.  Sixty days prior to the close of discovery, each party may serve a list of documents to which they would like a stipulation of authenticity.  If no objection is lodged within ten days, authenticity objections to those documents are waived.  The parties further agree that medical records accompanied by a certificate of authenticity, records certification, or verification form are stipulated authentic.

- There is a presumption that each party will file a single motion for summary judgment within the deadline set by the Court.  The parties agree, however, that there may be circumstances that warrant separate or partial motions for summary judgment, and a party may seek leave to file such motions if an agreement cannot be reached about the scope or number of such motions.  NPC notes specifically that in the event that NPC determines

that plaintiffs' claims are not timely under the statute of limitations, it may seek leave to file a separate and potentially early motion for summary judgment on that particular issue in the interests of judicial economy.  And if the Court denies NPC's motion to dismiss Plaintiffs' request for punitive damages, NPC may request the opportunity to brief that discrete issue in a separate summary judgment motion after discovery.

**E.      The necessity or desirability of amendments to the pleadings**

The parties reserve the right to seek leave to amend their pleadings after the deadline set by the Court to the extent permitted under the Federal Rules of Civil Procedure.

**F.      The possibility of obtaining admissions of fact and of documents, electronically stored information or things which will avoid unnecessary proof, stipulations regarding authenticity of documents, electronically stored information or things, and the need for advance rulings from the court on admissibility of evidence**

The parties will endeavor to work together to reach any stipulations of fact or evidentiary issues to avoid unnecessary issues of proof.  The parties believe that their proposal regarding authenticity in Section I(D) above will simplify matters of proof at trial.  The parties anticipate seeking advance rulings from the Court on the admissibility of evidence in advance of trial through the motions *in limine* process. NPC has proposed a schedule under which motions *in limine* would be submitted separately from dispositive and *Daubert* motions, in order to allow more opportunity to consider and resolve evidentiary issues in advance of trial.  NPC notes that the parties in *Lauris each* submitted multiple motions *in limine* (including five by plaintiffs) designed to narrow the disputes at issue and resolve evidentiary questions. NPC anticipates that at the appropriate time after the completion of discovery it will make a request to modify to Section 12 of the Court's Order for leave to file of motions *in limine* seeking greater than three requests for relief.  Plaintiffs agree with the Court's presumptive limit of one motion *in limine*

per party and accordingly oppose NPC's request for a separate briefing schedule for motions *in limine*.

**G.      Suggestions for the avoidance of unnecessary proof and of cumulative evidence**

The parties will endeavor to reach appropriate stipulations that will avoid unnecessary proof and cumulative evidence. The parties believe that their proposal regarding authenticity in Section I(D) above will simplify matters of proof at trial. The parties will look for opportunities to limit cumulative evidence and unnecessary proof during the pretrial process once they have had the opportunity to evaluate the opposing parties' evidence.

**H.      Suggestions on the advisability of referring matters to a magistrate judge or master**

The Court has referred this action to Magistrate Judge Shaniek Maynard for appropriate disposition of all *pro hac vice* motions, motions to substitute counsel, and pretrial motions related to discovery. The parties have no further suggestions on the advisability of referring matters to a magistrate judge or master.

**I.      A preliminary estimate of the time required for trial**

Plaintiffs estimate that trial will take between 7 to 10 full days. There are only two Plaintiffs, and it is likely that the vast majority, if not all, of Defendants' New Jersey corporate witnesses will be presented by limited deposition testimony. Plaintiffs' proposed trial schedule is more than sufficient to present such evidence and non-duplicative expert/medical testimony from fewer than 12 live witnesses. The notion that the parties would call 17 physicians at trial, as Novartis suggests, is unrealistic.

NPC anticipates that trial will take between 10 to 14 full days, given the anticipated number of fact and expert witnesses in this case, which is one reason why this case should be

designated for the Complex Track.  In *Lauris*, a case similar to this one (at least to the extent discernable based on Plaintiffs' complaint), the Plaintiffs identified in their discovery responses at least 17 physicians who treated the patient (plaintiffs have not yet disclosed how many treating physicians they will call at trial, but depositions were taken of 5 healthcare providers).  Plaintiffs named 7 expert witnesses – whose specialties include oncology and hematology, FDA regulatory issues, economics, epidemiology, vascular surgery, and pathology.  NPC named 5 experts in topics including oncology and hematology, cardiovascular disease, FDA regulatory issues, vascular surgery, cardio-oncology, and neurology.  NPC expects that plaintiffs will approach this case in a similar manner to *Lauris* – presenting oncology and hematology, cardiovascular, regulatory, epidemiology, and economics experts.  Unlike in *Lauris*, plaintiffs may add a neurologist as an additional expert, as the primary claim here involves a stroke in the brain – which falls within the field of neurology.  In addition, NPC produced emails from 14 current and former employees, and plaintiffs deposed 6 corporate witnesses in *Lauris*.  Using that similar case as a starting point, if there are 12 expert witnesses, numerous treating physicians, and 6 company witnesses to be presented either live or by deposition at trial, trial reasonably cannot be expected to be completed within 7-10 days as Plaintiffs propose, especially taking into account jury selection, opening statements, and closings.

> **J.      Requested date or dates for conferences before trial, a final pretrial conference, and trial**

The Court has set trial for August 20, 2018, a calendar call for August 15, 2018 at 9:00 a.m., and a status conference on June 20, 2018 at 9.30 a.m.  Plaintiffs will defer to the Court for the setting of any other pretrial conference.  As noted in Section II.A. below, NPC is seeking a Complex Track designation.  Pursuant to the Complex Track designation, the Court should set the case for trial on or after February 15, 2019.  NPC proposes a status conference on December

17, 2018 (60 days before NPC's proposed trial date), and a Calendar Call on or about February

11, 2019 (4 days before NPC's proposed trial date).

> **K.  Any other information that might be helpful to the court in setting the case for status or pretrial conference**

None.

## II.  <u>Joint Proposed Scheduling Order</u>

> **A.  Assignment of the case to a particular track pursuant to Local Rule 16.1(a)**

Plaintiffs propose that this case should be assigned to the Standard Track.

NPC proposes that this case be assigned to the Complex Track.

Local Rule 16.1 sets forth factors that shall be considered in assigning cases to various

tracks.  L.R. 16.1(a)(3).  The parties' application of those factors is set forth below in support of

their respective positions:

- *Complexity of the case.*

    <u>Plaintiffs' Position</u>.  This is a single-injury products liability action brought by

    Dennis McWilliams, who developed premature, accelerated, and severe atherosclerosis-

    related conditions at the age of 48 after taking Defendants' drug Tasigna.  Plaintiffs will

    prove that due to the perceived negative impact that warning of such conditions would

    have on sales, Novartis knowingly failed to warn United States doctors and patients of

    this dangerous condition associated with the drug, and that such failure to warn

    proximately caused Mr. McWilliams' injuries.  A substantial amount of fact and expert

    discovery has already been conducted by the parties in similar litigation—i.e., the *Lauris*

    case, which is set for trial in January 2018.  A single-injury personal injury case issues

    where substantial discovery regarding corporate conduct, labelling, and general causation

    has already occurred, does not require the maximum-length schedule proposed by NPC.

NPC's Position.  This case involves complex questions of a scientific, medical, and regulatory nature spanning multiple disciplines and specialties.  Plaintiffs allege that Tasigna®, a medication prescribed for a relatively rare blood cancer, chronic myeloid leukemia, caused Mr. McWilliams to develop cardiovascular disease, namely atherosclerosis of the carotid arteries in his neck allegedly leading to a stroke in his brain.  Although Plaintiffs above state their claims are a "single-injury," the Complaint and Plaintiffs own statements above allege Mr. McWilliams developed "atherosclerosis-related conditions," suggesting the possibility of additional undisclosed claims beyond what is mentioned in the Complaint.  Plaintiffs bear the burden of proving that NPC failed to provide adequate warnings based on the available scientific data at the time Mr. McWilliams was prescribed Tasigna®, and that this lack of information caused plaintiffs' alleged injuries.  As discussed above in Section I.I, NPC anticipates that the parties may name a dozen or more experts to testify about the complex array of scientific, regulatory, and medical issues involved in the case – including oncology and hematology, cardiovascular disease, vascular surgery, neurology, epidemiology, FDA regulations, and economics.  Moreover, there will be numerous depositions of fact witnesses with knowledge of the facts surrounding plaintiffs' claims, including treating physicians such as the prescribing oncologist, the physicians who diagnosed and treated Mr. McWilliams for his alleged injuries, as well as plaintiffs themselves.  The number of physicians from which records are likely to be collected will in all likelihood exceed the 17 physicians that were initially identified by the plaintiffs in *Lauris* (as NPC identified additional treating physicians there through records collection and review), and some subset of those will require depositions.  In *Lauris*, a total of 22 witnesses were deposed, including

6 depositions of current or former employees, 4 of which were Rule 30(b)(6) depositions. The scope of necessary discovery regarding plaintiffs' claims and Mr. Williams' medical condition are too complex to expect that the necessary records can be obtained, reviewed for completeness, and depositions completed in advance of plaintiffs' proposed expert disclosure deadline of February 19, 2018, especially while counsel for the parties are also preparing for and conducting a trial set for January 23, 2018.

- *Number of parties.* There are four parties currently named in plaintiffs' complaint—Dennis McWilliams and his wife, Lori; NPC; and Novartis AG. NPC notes that the inclusion of Novartis AG likely will result in additional motions practice, as Novartis AG is a Swiss holding company that does not label and market Tasigna® in the United States. Plaintiffs note that any motion practice by Novartis AG is likely to be duplicative of its motion for summary judgment already briefed and pending in the *Lauris* case. Aside from that motion, in the *Lauris* case, Novartis AG merely joined in every other motion and brief filed by NPC in *Lauris*.

- *Number of expert witnesses.*

    Plaintiffs' Position. As in *Lauris*, Plaintiffs anticipate that the parties will collectively disclose 12 or fewer experts. The vast majority of discovery relating to these experts has already been conducted in *Lauris*. Only portions of six expert reports in *Lauris* pertained to specific causation issues that would be inapplicable to this case. All general causation expert opinions and regulatory opinions provided in *Lauris* are likely to be regenerated here with minimal, if any changes. Plaintiffs further note that a motion to exclude three of Defendants' experts is currently pending in *Lauris*, and the testimony of these three experts is largely duplicative of each other.

NPC's Position.  As described in more detail above in Section I.I, in the *Lauris* case where plaintiffs allege similar injuries purportedly caused by Tasigna®, the parties named a total of a dozen experts (11 of whom provided expert reports), and all of whom were deposed.  These experts' experience spans at least ten specialties/fields, including oncology and hematology, cardiovascular disease, cardio-oncology, neurology, vascular surgery, pathology, pharmacology and toxicology, epidemiology, economics, and FDA's regulatory scheme.  As Plaintiffs point out, half of the experts there provided specific causation opinions that will by necessity be different in this case, which involves claims of atherosclerosis in a different location than in *Lauris*.  Moreover, the scope of the expert's opinions on issues other than specific causation will still be guided by the general facts of this case – such as the adequacy of NPC's warnings, which is an inquiry that is based on the timing of Mr. McWilliams' use of Tasigna and the available scientific data at that time, the circumstances under which his physician decided to prescribe Tasigna, and the information considered in connection with that decision.  Also, general causation will present different issues than in *Lauris* – as the locations of atherosclerosis vary in the two cases and this case does not appear to involve peripheral artery occlusive disease in the legs as in *Lauris*.  In addition to the need to conduct discovery for these experts, NPC anticipates that both plaintiffs and NPC will file *Daubert* and other evidentiary motions addressing the scope and admissibility of their testimony.  NPC also expects that it will request a *Daubert* evidentiary hearing, which is a reason why NPC has requested that *Daubert* motions be filed 150 days before trial, rather than the 120 days before trial anticipated in Section 2 of the Court's order.

- *Volume of evidence.*

Plaintiff's Position.  A large volume of evidence has already been collected and produced by the parties in *Lauris.*  There is no burden whatsoever in deeming this evidence as reproduced in this case.  As noted below, the parties agree that all of the documents produced by NPC in *Lauris*, and all of the non-plaintiff/decedent-specific documents produced by plaintiffs in *Lauris*, should be deemed produced in this case. Plaintiffs anticipate focused additional discovery in this case, including the production of Dennis McWilliams' medical records and focused additional fact discovery directed to Defendants.

NPC's Position.  In the *Lauris* case, NPC produced more than 10.6 million pages in response to multiple sets of discovery requests from plaintiffs, including emails from 14 current and former employees.  The volume of evidence in this case will be as expansive as that produced by NPC in *Lauris*.  Moreover, in *Lauris*, plaintiffs produced more than 9,000 pages of records, and NPC collected more than 3,200 pages of medical records from more than 30 healthcare providers.  Plaintiffs suggest, but notably have not stated, that they will forego additional corporate discovery from NPC.  Moreover, the volume of evidence is relevant not just to evaluating the time needed for discovery, but also the time needed to conduct trial.

- *Problems locating or preserving evidence.*

Plaintiff's Position.  Plaintiffs will provide NPC with all appropriate authorizations for Dennis McWilliams' medical and employment records this week.  As in *Lauris*, Plaintiffs anticipate that the vast majority, if not all, of such records will be collected by the parties within two months, well in advance of Plaintiffs' proposed expert disclosure deadline.  Plaintiffs do not believe that a maximum-length case schedule is

appropriate based on a speculative delay in obtaining records that is contrary to historical experience.

      <u>NPC's Position.</u>  Mr. McWilliams' medical and insurance records will need to be collected during the course of discovery.  This process requires obtaining HIPPA-compliant medical release authorizations.  NPC also anticipates collecting non-medical records to address plaintiffs' economic damages claims, such as state and federal tax and employment records.  Plaintiffs have indicated that they will provide such authorizations but have not yet done so, and NPC cannot even begin the process until that has occurred. In *Lauris*, after the Court ruled on a motion to dismiss and held a scheduling conference, the court still provided nearly nine months (in addition to the five months that had elapsed since the filing of the case) for the completion of fact discovery *before* expert discovery commenced.  Moreover, after plaintiffs provided their initial set of authorizations, NPC identified additional providers for whom authorizations had not been provided.  The process of obtaining the necessary releases (including in some cases proprietary authorizations at the request of particular providers) itself took two months in *Lauris*.  In NPC's counsel's experience in hundreds of personal injury cases, this process of initial records collection and the identification of additional sources that are not immediately apparent takes substantial time, as it requires NPC to obtain from plaintiffs signed records release authorizations, the collection of records from records custodians, a review of those records to ensure they are relatively complete, and then the scheduling and completion of depositions.  During the records review process, additional providers or gaps in the records provided by third parties are often located, necessitating new authorizations from plaintiffs and new collection of records.  Unlike in *Lauris*, where the

patient passed away following a surgical complication, Mr. McWilliams is alive and has
continued to see healthcare providers, potentially for multiple years since the events at
issue in the Complaint occurred.  Moreover, in *Lauris*, there were instances that despite
the parties best efforts to collect records, additional medical records, including from
additional providers, were not identified until the parties took depositions.  Unlike
plaintiffs, who presumably conducted their records collection prior to filing suit, NPC has
not yet had the opportunity to even begin this process.

- *Time estimated by the parties for discovery and time reasonably required for trial.*

    Plaintiffs' Position.  As discussed above, Plaintiffs' proposed Standard Track
schedule allows 184 days for discovery and 7-10 days for trial.  Plaintiffs believe this is
reasonable given the large volume of relevant discovery that has already been conducted
in *Lauris* and the anticipated number of live witnesses to be presented at trial.

    NPC's Position.  Local Rule 16.1(a)(2)(C) notes that the Complex Track involves
cases requiring over 10 days of trial.  As described above in Section I.I above, NPC
believes that given the anticipated number of expert and fact witnesses, as described
above, trial is unlikely to be completed in less than 10 trial days, and therefore a Complex
Track designation is appropriate.  NPC also notes that the process of identifying and
collecting Mr. Williams' medical records will take more time than is afforded under
plaintiffs' proposed schedule, which contemplates a February 2018 expert disclosure
deadline, as described in the paragraph above.  NPC has proposed a schedule under the
Complex Track that should provide sufficient time in advance of expert disclosures to
obtain records release authorizations from plaintiffs, to send requests to records

15

custodians, to obtain and review records to ensure they are complete and to identify

additional records sources, and to then complete the depositions of treating physicians

and other fact witnesses.

**B.     The detailed discovery schedule agreed to by the parties.**

1.     Initial disclosures under Rule 26(a)(1)(A)

Plaintiffs propose **November 1, 2017.**  NPC proposes **December 6, 2017.**

2.     Primary/initial expert disclosures

Plaintiffs propose **February 19, 2018**.  NPC proposes **June 15, 2018** for plaintiffs'

primary/initial expert disclosures and **July 13, 2018** for NPC's primary/initial expert

disclosures.  NPC requests that the standard disclosure requirements of Rule 26(a)(2)(C)

be applied to non-retained treating physicians, psychologists and other health providers

from whom testimony will be sought pursuant to Rules 702, 703, and 705.  The

information contained in such disclosures is necessary to allow the parties to assess

whether *Daubert* motions or additional discovery may be required.

3.     Rebuttal/responsive expert disclosures

Plaintiffs propose **March 21, 2018.**  NPC proposes **August 10, 2018.**

4.     Deadline for all discovery

Plaintiffs propose **April 20, 2018,** which is the last business day 120 days prior to trial,

the Court's presumptive deadline set by its Order.  NPC proposes **September 18, 2018**, which is

150 days prior to trial, to allow sufficient time for the parties to brief and the Court to decide pre-

trial motions in advance of trial, as discussed in detail in Sections I.C.iii and II.A above.

16

C.    **Any agreements or issues to be decided by the Court regarding preservation, disclosure, and discovery of documents, electronically stored information, or things**

The parties anticipate the need for a protective order governing confidential information exchanged in discovery and intend to negotiate and file a proposed protective order with the Court.  Plaintiffs do not, however, anticipate agreeing to a protective order that would require Plaintiffs to file documents filed with the Court in support of motions under seal.  The parties will meet and confer on the proposed protective order to address additional issues, such as data privacy in accordance with the Sedona Conference model.

The parties agree that discovery taken in the *Lauris* case, including depositions of NPC's current and former employees and documents produced by the parties (other than records specific to the plaintiffs and the decedent in that case), be deemed produced in this case, subject to the entry of a protective and confidentiality order providing substantially equivalent protections.  Plaintiffs note, however, that the vast majority of the *Lauris* depositions, and a large number of documents, have been publicly filed in *Lauris* and are no longer subject to confidentiality protections.

D.    **Any agreements the parties reach for asserting claims of privilege or protection of trial preparation material after production**

Plaintiffs believe that these issues are adequately addressed by Rule 502(a) & (b) of the Federal Rules of Evidence.  NPC requests the entry of an order pursuant to Federal Rule of Evidence 502(d) providing that no privilege or protection is waived by disclosure connected with this litigation, which would permit discovery without having to spend additional time on further privilege review.  NPC is conferring with plaintiffs' counsel regarding proposed language and will submit a proposed order to the extent an agreement can be reached or a motion in the event there are issues that cannot be resolved between the parties.  In the event that a Rule 502(d) order

and protective order does not provide adequate protections, additional time may be required for review in advance of production.

      **E.**      **Limitation of time to join additional parties and to amend the pleadings**

Plaintiffs propose **December 13, 2017,** which is within 60 days following entry of the scheduling order, the presumptive deadline set by the Court's Order.  NPC reserves its right to name additional parties based on information obtained during discovery and to file a responsive pleading after the resolution of any motions to dismiss.

      **F.**      **Date for filing all pretrial motions**

Plaintiffs propose that all pretrial motions, including motions for summary judgment and *Daubert* motions, be filed by **May 22, 2018**, which is 90 days prior to trial, the presumptive date set by the Court's Order.  NPC proposes that dispositive pretrial motions and *Daubert* motions be filed by **October 18, 2018**, which is 120 days prior to trial, and that motions *in limine* and all other pretrial motions be filed by **November 16, 2018**, which is the last business day 90 days prior to trial and the anticipated deadline pursuant to Section 2 of the Court's Order.  This will allow time to accommodate a *Daubert* evidentiary hearing that NPC anticipates it will request.

      **G.**      **Date certain for resolution of all pretrial motions by the Court**

The Parties will defer to the Court's preference for a date certain of resolution of motions.  NPC suggests that the Court and the parties would benefit from the resolution of pretrial motions at a time sufficiently in advance of trial (at least 30 days before trial) to allow the parties to ensure that their final submissions reflect the Court's guidance and rulings.

      **H.**      **Any proposed use of the Manual of Complex Litigation and any other need for rule variations, such as on deposition length or number of depositions**

None.

## I.        Date of pretrial conference

The Court has set a status conference for June 20, 2018 at 9:30 a.m., and a Calendar Call for August 15, 2018 at 9:00 a.m.  Plaintiffs agree with these dates.  NPC proposes that the status conference be set on or about December 17, 2018 (60 days before NPC's proposed trial date), and a Calendar Call on or about February 11, 2019 (4 days before NPC's proposed trial date). The parties will defer to the Court for the dates of any additional pretrial conferences.

## J.        Trial Date

The Court has set a trial date of August 20, 2018.  Plaintiffs agree to this trial date.  NPC proposes that trial be set on or after February 15, 2019 (120 days after the close of discovery).

## K.        Other Deadlines

1.        <u>Deadline to select a mediator and to schedule a time, date, and place for the mediation</u>

The parties propose **November 17, 2017**, which is anticipated to be within 30 days following entry of the scheduling order, the presumptive deadline set by the Court's Order.

2.        <u>Deadline to complete mediation</u>

Plaintiffs propose **June 21, 2018**, which is 60 days prior to trial, the presumptive deadline set by the Court's Order.  NPC proposes **December 17, 2018**, which is 60 days prior to NPC's proposed trial date, the anticipated deadline pursuant to Section 2 of the Court's Order.

3.        <u>Deadline to file and exchange Rule 26(a)(3) witness, exhibit lists, and deposition designations</u>

Plaintiffs propose **July 13, 2018**, which is over 30 days prior to trial, the presumptive deadline set by Local Rule 16.1(d)**.**  NPC proposes **January 16, 2019**, which is 30 days prior to NPC's proposed trial date, pursuant to Local Rule 16.1(d).  To meet this deadline, NPC proposes that plaintiffs exchange their deposition designations on January 9, 2019, as plaintiffs bear the

burden of proof and will present their evidence first at trial, and NPC's designations will depend on what testimony plaintiffs' introduce.  Plaintiffs oppose NPC's request to impose an earlier deposition designation deadline on Plaintiffs.

4.      Deadline to file Joint Pretrial Stipulation

Plaintiffs propose **August 8, 2018**, which is 7 days prior to the Calendar Call, the presumptive deadline set by Local Rule 16.1(d).  To meet this deadline, Plaintiffs propose exchanging counter-designations and objections to exhibits by **July 27, 2018**.  Plaintiffs further propose to meet and confer to prepare the Joint Pretrial Stipulation and address the issues set forth in Local Rule 16.1(d) by **August 1, 2018**, which is 14 days prior to the Calendar Call, the presumptive deadline set by Local Rule 16.1(d).

NPC proposes **February 4, 2019**, which is 7 days prior to NPC's proposed calendar call, the anticipated deadline pursuant to Local Rule 16.1(d).  To meet this deadline, NPC proposes exchanging counter-designations and objections to exhibits by **January 23, 2019**.  NPC further proposes to meet and confer to prepare the Joint Pretrial Stipulation and to address the issues set forth in Local Rule 16.1(d) by **January 28, 2019**, which is 14 days prior to the Calendar Call, the anticipated deadline pursuant to Local Rule 16.1(d).

5.      Deadline to file objections to deposition testimony

Plaintiffs propose **August 8, 2018**.  NPC proposes **February 4, 2019**.

6.      Deadline to file jury instructions

Plaintiffs propose **August 10, 2018**.  NPC proposes **February 7, 2019.**

Dated: October 18, 2017

Respectfully Submitted,

/s/ Bryan f. Aylstock_____
Bryan F. Aylstock, Esq. (Bar No. 0078263)
baylstock@awkolaw.com
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 E. Main Street, Suite 20
Pensacola, Florida 32502
Phone: (850) 2020-1010
Fax: (850) 916-7449

ELIAS GUTZLER SPICER LLC
Richard M. Elias, admitted *pro hac vice*
Greg G. Gutzler, admitted *pro hac vice*
Tamara M. Spicer, admitted pro *hac vice*
130 South Bemiston Avenue, Suite 302
St. Louis, Missouri 63105
Telephone: (314) 274-3311
relias@egslitigation.com
ggutzler@egslitigation.com
tspicer@egslitigation.com

ONDER SHELTON O'LEARY
PETTERSON LLC
James G. Onder, admitted *pro hac vice*
Evan C. Murphy, admitted *pro hac vice*
110 East Lockwood
St. Louis, Missouri 63119
Telephone: (314) 363-9000
onder@onderlaw.com

*Counsel for Plaintiffs*

/s/ Michael Thomas _____
Michael J. Thomas (Florida Bar No. 897760)
(mike@penningtonlaw.com)
PENNINGTON P.A.
215 South Monroe St., 2nd Floor
Tallahassee, FL 32301
(850) 222-3533
(850) 222-2126 (fax)

Katharine R. Latimer (*pro hac vice* to be filed)
(klatimer@hollingsworthllp.com)
Robert E. Johnston (*pro hac vice* to be filed)
(rjohnston@hollingsworthllp.com)
Andrew L. Reissaus (*pro hac vice* to be filed)
(areissaus@hollingsworthllp.com)
  HOLLINGSWORTH LLP
  1350 I Street, NW
  Washington, D.C. 20005
  Telephone: (202) 898-5800
  Facsimile: (202) 682-1639

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*