**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**Case No.: 2:17-cv-14302-ROSENBERG/MAYNARD**

Dennis McWilliams and
Lori McWilliams,

                Plaintiffs,

vs.

Novartis AG, a Global Healthcare
Company; Novartis Pharmaceuticals
Corporation, a Delaware Corporation,

                Defendants.

_____/

**DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S**
**MOTION TO EXCLUDE TESTIMONY OF DR. MARK WEISS**
**WITH SUPPORTING MEMORANDUM OF LAW**

## Table of Contents

REQUEST FOR HEARING ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

ADMISSIBILITY STANDARDS UNDER DAUBERT AND RULE 702 .................................. 2

ARGUMENT ............................................................................................................... 3

I.      PLAINTIFFS HAVE NOT ESTABLISHED THE ADMISSIBILITY OF DR. WEISS'
        FIRST OPINION – THAT TASIGNA® CAUSES ATHEROSCLEROSIS-RELATED
        CONDITIONS. ................................................................................................. 3

        A.     Dr. Weiss's General Causation Opinion Should Be Excluded As Unreliable Under

               The Federal Rules And *Daubert*. ........................................................... 3

        B.     Dr. Weiss Failed To Provide The Scientific Foundation For His Opinions About

               Potential Mechanisms, And He Failed To Evaluate Whether His Potential

               Mechanisms Might Also Apply To Gleevec, Rendering His Opinions Unreliable

               Under The Federal Rules and *Daubert* .................................................. 7

II.     BECAUSE DR. WEISS DOES NOT OFFER AN OPINION ABOUT CML
        TREATMENT DECISIONS SPECIFIC TO MR. MCWILLIAMS, HIS SECOND
        OPINION TOPIC IS IRRELEVANT AND WOULD NOT ASSIST OR AID THE
        JURY .............................................................................................................. 8

III.    DR. WEISS SHOULD BE PRECLUDED FROM TESTIFYING ABOUT THE
        ADEQUACY OF TASIGNA'S WARNING BECAUSE HE LACKS THE NECESSARY
        QUALIFICATIONS AND FAILED TO APPLY A RELIABLE METHODOLOGY. .... 11

CONCLUSION ........................................................................................................... 13

LOCAL RULE 7.1(a)(3) CERTIFICATION ................................................................. 13

i

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), NPC hereby requests oral argument on NPC's Motion to Exclude Testimony of Dr. Mark Weiss and a *Daubert* evidentiary hearing, where the Court can see Dr. Singh testify and even ask him questions directly.  Oral argument will streamline the Court's consideration of NPC's Motion and allow for a more efficient resolution of the issues raised therein.  An evidentiary hearing would assist the Court in discharging its obligation as a *Daubert* gatekeeper.  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) ("[D]istrict courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant.").  Evidentiary hearings are particularly important in "less usual or more complex cases," such as this, "where cause for questioning the expert's reliability arises."  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also City of Tuscaloosa v. Harcras Chem. Inc.*, 158 F.3d 548, 564-65 n.21 (11th Cir. 1998) (*Daubert* hearings "are almost always fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses, such as the instant case.").

NPC proposes a full day hearing for oral argument and evidentiary hearings on this and NPC's concurrently filed pre-trial motions.

## **INTRODUCTION**

Plaintiffs have designated Dr. Mark Weiss, an oncologist/hematologist who retired from practice, as a retained expert witness.   NPC moves to exclude Dr. Weiss' testimony on the opinions expressed in his report:

1.    "Nilotinib (Tasigna) is causally associated with atherosclerotic-related conditions, including accelerated and severe vascular occlusive disease.   The plausible mechanisms of action include direct effects on the blood vessels promoting atherosclerosis, inhibition of mechanisms that counteract atherosclerosis, and metabolic effects, including the worsening of cholesterol levels and increasing blood sugar levels."

2.    "For patients with pre-existing risk factors for atherosclerotic-related events, including a history of smoking and hypertension, there are safer and better-suited treatment alternatives to nilotinib for a fully informed physician to choose from. It is imperative that physicians who do prescribe nilotinib monitor patients for developing atherosclerotic-related diseases."

3.    "The nilotinib U.S. product label in effect during the time of Mr. McWilliams' Tasigna treatment did not appropriately warn of the severe atherosclerosis-related risks associated with the drug."

Expert Report of Mark Weiss, MD ("Weiss Report") (Ex. 1) at 1.[1]

Dr. Weiss did not apply a reliable methodology to reach his general causation opinion that Tasigna causes accelerated atherosclerosis-related conditions. For example, he testified with regard to accelerated atherosclerosis that he "know[s] it when I see it," and he depends on case reports of individual patients as a primary source for many of his opinions related to general causation.   *See infra* §I.   Dr. Weiss' second generalized opinion about CML treatment options should be excluded because he cannot link them to Mr. McWilliams' specific case and because he did not conduct an adequate medical record review.   *See infra* §II. Dr. Weiss should also be precluded from offering opinions about the adequacy of Tasigna's labeling because he lacks expertise in the regulatory process by which labeling is created and approved and because he has

---

[1] Plaintiffs also produced a supplemental report for Dr. Weiss.  Suppl. Report (Ex. 2).

not applied a reliable methodology – instead relying on foreign regulatory actions as his basis for concluding US labeling was inadequate.  *See infra* §III.

In particular, For these reasons, as set forth more fully below, the Court should preclude Dr. Weiss from opining that Tasigna causes atherosclerotic-related conditions and the potential mechanisms, about treatment options and prescribing decisions, and the adequacy of Tasigna's label.  *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); Fed. R. of Evid. 702.

In light of the complex medical and scientific issues involved, NPC requests a live evidentiary hearing to address these *Daubert* concerns.  *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564 n.21 (11th Cir. 1998).

## ADMISSIBILITY STANDARDS UNDER DAUBERT AND RULE 702

In *Daubert*, the Supreme Court addressed the admissibility of expert testimony and established "the exacting standards of reliability such evidence must meet."  *See Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).  Under Federal Rule of Evidence 702 and *Daubert*, the court must determine whether "(1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is 'sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*'; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (quoting *United States v. Frazier*, 387 F. 3d 1244, 1260 (11th Cir. 2004)).  "[D]istrict courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Frazier*, 387 F. 3d at 1260 (internal quotation marks and citation omitted).

In particular, plaintiffs must establish that the expert witness has the necessary expertise, in the form of "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to render an opinion on the specific issue addressed by his proposed testimony.  Second, plaintiffs must establish that the expert's testimony is "reliable" – *i.e.*, that the testimony is "ground[ed] in the methods and procedures of science[,]" as opposed to the expert's "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590 (quotation marks omitted).  Third, plaintiffs must establish that the testimony "will assist the trier of fact to understand the evidence or to

2

determine a fact in issue," Rule 702, which means that the testimony must have "a valid scientific connection" to – *i.e.*, must "fit" – the pertinent inquiry in the lawsuit. *Daubert*, 509 U.S. at 591-92. "Because of the powerful and potentially misleading effect of expert evidence," even opinions that "otherwise meet the admissibility requirements may still be excluded [under] Rule 403." *Frazier*, 387 F. 3d at 1263.

## ARGUMENT

**I.    PLAINTIFFS HAVE NOT ESTABLISHED THE ADMISSIBILITY OF DR. WEISS' FIRST OPINION – THAT TASIGNA® CAUSES ATHEROSCLEROSIS-RELATED CONDITIONS.**

### A.    Dr. Weiss's General Causation Opinion Should Be Excluded As Unreliable Under The Federal Rules And *Daubert*.

Dr. Weiss, like plaintiffs' epidemiologist Dr. Singh, offers a general causation opinion – i.e., that Tasigna causes "accelerated and severe" atherosclerosis-related events. Unlike Dr. Singh, Dr. Weiss did not undertake to conduct a meta-analysis. *See* Weiss Report at 3-8 (Ex. 1). Dr. Weiss also did not mention the Bradford Hill criteria in his report to analyze whether an observed association is causal or not, as Dr. Singh attempted. *See id.*; NPC's Mot. to Exclude Dr. Singh § II.A (addressing Dr. Singh's Bradford Hill discussion). Nevertheless, Dr. Weiss' opinions suffer from many of the same deficiencies as Dr. Singh's, which render them unreliable and inadmissible under *Daubert* and Rule 702.

Dr. Weiss fails to apply an objective standard for evaluating whether the available data demonstrates a causal relationship between Tasigna and accelerated atherosclerosis, instead saying, "I know it when I see it":

> Q.  Based on those articles [in your report], can you provide an objective standard for the amount of time that would indicate what accelerated atherosclerosis is?
>
>         . . .
>
> A.  Again, I do not hold myself out to be a cardiovascular expert, but my general sense is that in most settings, atherosclerosis is a disease that takes years, if not decades, to develop a clinically important problem.

3

> So for this to happen within a year, and for that matter, within two or even three years, and other short time points, perhaps even less than a decade, would represent a more rapid course than people who aren't taking nilotinib would on average have.
>
> So I can't – it's again, the pornography issue.  I can't – I know it when I see it or at least I have a sense of it when I see it, but I don't know that I can define it as an exact, you know, period of time.

Mark Weiss Dep. 129:8 – 130:8, July 14, 2017 ("7/14/17 Weiss Dep.") (Ex. 3).[2,3]

When pressed further, Dr. Weiss cited as "the best data in my mind" a case study reporting on a single patient.  *Id.* at 127:16-17, 131:8-21; Mirault et al., *Rapid Onset of Peripheral Artery Disease in a Chronic Myeloid Leukemia Patient Without Prior Arterial Disorder, Direct Relationship with Nilotinib Exposure in Clinical Outcome*, Eur J Haematol. 2015 Apr;94(4):363-7 (Ex. 4).  He testified:

> Q.  When you say faster in some patients, is there any objective time period that you can apply to that?
>
> MR. ELIAS:  Object to form.
>
> A.  Well, there is, you know, in the reading, you get some sense of timing based on the reports of how long people were on nilotinib when this happened, but **the best data in my mind comes from the analysis of a patient** who actually had a fairly thorough evaluation before starting nilotinib, including CT

---

[2] Dr. Weiss used the same analogy earlier in his deposition, when asked "what suboptimal response" to a tyrosine kinase inhibitor means: "I was smiling because I was thinking of, I think it was the Supreme Court justice who talked about pornography.  I don't know how to define it, but I know it when I see it.  Again, suboptimal response really is circumstance specific. . . ." *Id.* at 65:3 – 22.

[3] Dr. Weiss was deposed in another Tasigna product liability matter, *Lauris v. Novartis AG*, No. 3:16-cv-00393-SEH (C.D. Cal.).  The testimony in that case is also applicable here, as his opinions are necessarily of a general nature, and as Dr. Weiss noted, changes in his report between the two cases were "minor."  Mark Weiss Dep. 8:18 – 9:11, Apr. 24, 2018 ("4/24/18 Weiss Dep.") (Ex. 5).

> angiograms, and was reported to have no apparent atherosclerosis at that point, and then I believe it was a year following the initiation of nilotinib developed symptoms of atherosclerosis; reduced blood flow, in this case to his legs, and they redid the CT angiograms at that point and found that within a fairly short period of time, in terms of how we normally measure the development of atherosclerosis, this patient had developed clinically important atherosclerosis in his legs and atherosclerosis in many other areas of his body, even though at that point in time, I don't believe they were clinically important.

7/14/17 Weiss Dep. 127:9 – 128:11. This is the only publication he has seen using pre- and post- treatment imaging. *Id.* at 135:15-19, 136:5-9. As argued in NPC's Motion to Exclude Dr. Singh, Section II.b, plaintiffs' experts' accelerated atherosclerosis hypothesis is unreliable because it is based on insufficient data from case reports and because they cannot provide an objective definition for the term. Courts frequently reject case reports as unreliable primary general causation proof because they "reflect only reported data, not scientific methodology. . . . Simply stated, case reports raise questions; they do not answer them." *McClain v. Metabolife Int'l, Inc*., 401 F.3d 1233, 1254 (11th Cir. 2005); *see also Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133 (D. Ariz. 2001) ("[C]ase reports do not provide reliable scientific evidence of causation. Rather, they are merely compilations of occurrences, and have been rejected as reliable scientific evidence supporting an expert opinion that *Daubert* requires"); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1411 (D. Or. 1996) (finding that "case reports and case studies are universally regarded as an insufficient scientific basis for a conclusion regarding causation because case reports lack controls"; hence, they do not supply scientific knowledge upon which an opinion can be based under Daubert). Consequently, relying on anecdotal case reports to support a causation opinion "is contrary to . . . good scientific practice." *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 542 (W.D. Pa. 2003).

Dr. Weiss identified another instance where individual cases led him to new opinions. For example, when asked what information led to his conclusion around 2013 that there was a linkage between Tasigna and atherosclerosis, he testified that as he became aware of more publications:

> I remember the first time I heard that a patient needed an amputation, I thought I can't remember the last CML patient I had who needed to have something amputated . . .
>
> …And the other thing I really remarked on – and this did come I think from one of the original reports – is a spinal cord infarct which is very rare compared to an infarct in your – which many people as they get old – have infarcts in their brains which we routinely call strokes.

7/14/17 Weiss Dep. 76:5 – 77:17 (Ex. 3). Dr. Weiss "do[es] not hold himself out to be a cardiovascular expert," *id.* at 102:8-9, especially outside of the context of leukemia or cancer, *id.* at 93:10-15 (regarding vascular system)). Dr. Weiss admits, however, that the authors of the study regarding the spinal cord infarct did not appear to have done testing to ascertain the underlying cause of the event. *Id.* at 141:8-17. Case reports are not reliable causation proof, and Dr. Weiss' repeated references to them as underpinnings of his beliefs renders those opinions unreliable. *Cloud*, 198 F. Supp. 2d at 1133 (rejecting as reliable scientific evidence "compilations of occurrences" from case reports).

Like Dr. Singh, Dr. Weiss also fails to take into account the background rate for atherosclerotic events and the possibility that Gleevec may be cardio-*protective*, meaning that there are fewer adverse events in CML patients on Gleevec than in CML patients without TKI therapy. As discussed in more detail in NPC's Motion to Exclude Dr. Singh, there is evidence, including new data from an ongoing clinical study to test Gleevec as a treatment to slow the progression of diabetes, to support this hypothesis. *See* NPC's Mot. to Exclude Singh § I.B.2. (citing more than a half-dozen peer-reviewed articles and a news report of June 2017 clinical study findings regarding Gleevec and diabetes).

Dr. Weiss relied on study data comparing patients on Gleevec and Tasigna. 7/14/17 Weiss Dep. 152:14 – 153:3 (Ex. 3); *id.* at154:2-4 ("The best data we have for trying to assess the effects of nilotinib is in the randomized trial to imatinib"). Dr. Weiss acknowledged that examining general rates for events in the overall population "is certainly one of the factors that I assess when trying to determine how powerful the importance of the information is." *Id.* at 146:20 – 147:2. Dr. Weiss, however, in his report did not compare rates of atherosclerosis-related events with Tasigna to the general population or in the CML population that did not

receive TKI therapy, and testified that it would be "comparing apples and oranges." *Id.* at 175:14 – 176:19; *see Weiss* Report at 3-4 (Ex. 3) (discussing clinical data supporting opinion). Dr. Weiss' causation opinion, which is based on data comparing Tasigna and Gleevec, is thus based on a false assumption – that Gleevec is a proper comparator – rendering his general causation opinion unreliable. *See Hall v. Thomas*, 753 F. Supp. 2d 1113, 1146-47 (N.D. Ala. 2010) (excluding as unreliable expert's use of proxy that failed to control for other explanations, noting "[E]xpert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the ... court[ ] must take care to weigh the value of such evidence against its potential to mislead or confuse.") (quoting *Frazier*, 387 F.3d at 1263 (emphasis in original)); *Thomas v. Evenflo Co., Inc., No. 2:02CV2001-VEH*, 2005 WL 6133409, at *16 (N.D. Ala. August 11, 2005) (striking opinion based on testing "with a dummy of the wrong size and weight" as "any results obtained therefrom could not assist the trier of fact").

**B.      Dr. Weiss Failed To Provide The Scientific Foundation For His Opinions About Potential Mechanisms, And He Failed To Evaluate Whether His Potential Mechanisms Might Also Apply To Gleevec, Rendering His Opinions Unreliable Under The Federal Rules and *Daubert*.**

Dr. Weiss has a section in his report titled "Plausible mechanisms of action" in which he discusses what he calls "a very plausible rationale for the mechanism" of "nilotinib and developing problems related to progressive atherosclerosis." Weiss Report at 5 (Ex. 1). He cites to a single article in this section, a case report from 2014 of a single patient. *Id.* at 7 ("worsens the effects of atherosclerosis" (in contrast to accelerating the formation of atherosclerosis)); Maurizot, et al., *Rapid clinical improvement of peripheral artery occlusive disease symptoms after nilotinib discontinuation despite persisting vascular occlusion*, Blood Cancer J., v. 4 (2014) (Ex. 6). Dr. Weiss failed to identify other articles in his report to support this hypothesis. 7/14/17 Weiss Dep. 253:17 – 256:22 (Ex. 3). A single case report does not constitute a reliable basis for such an opinion. *See, e.g. McClain* 401 F.3d at 1254 ("case reports raise questions; they do not answer them").

Dr. Weiss states that this "case report itself, along with particularly the depletion of these specific type of mas[t] cell, is very concerning that this, in fact, is an important mechanism." 7/14/17 Weiss Dep. at 257:15-19 (Ex. 3). His report says that this potential mechanism is what he calls "off-target effects". Weiss Report at 6 (Ex. 1). But Dr. Weiss did not provide a citation

7

in his report to support this discussion "KIT positive mast cell depletion," and he testified that "I do not have a citation for the entire section that I call off target effects." 7/14/17 Weiss Dep. 258:7-13 (Ex. 3). Moreover, as with his general causation opinion where he failed to consider that Gleevec is an inappropriate comparator, Dr. Weiss also admitted that he failed to conduct a similar analysis of off-target effects of other TKIs, such as Gleevec. *Id.* at 258:24 – 259:22, 185:16-21. Dr. Weiss' broad failure to identify mechanistic data (i.e., the literature) he relied upon for this section of his report demonstrates that he has not utilized a reliable scientific methodology in developing it. Because an expert witness' opinion must be based on a chain of sound scientific reasoning and not just his own belief in its accuracy, Dr. Weiss' mechanism opinion should be excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

In sum, Dr. Weiss' general causation opinions should be excluded as unreliable. *See, e.g.*, Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Evid. 702.

## II.    BECAUSE DR. WEISS DOES NOT OFFER AN OPINION ABOUT CML TREATMENT DECISIONS SPECIFIC TO MR. MCWILLIAMS, HIS SECOND OPINION TOPIC IS IRRELEVANT AND WOULD NOT ASSIST OR AID THE JURY.

Dr. Weiss offers general information about CML treatments in his expert report, without drawing a connection to Mr. McWilliams. If allowed at trial, such testimony would not be useful to the trier of fact, as it lacks the required "fit" to this case and the relevant proximate cause issue – whether Dr. Walia would have prescribed Mr. McWilliams Tasigna had he received a different warning. Dr. Weiss expressly disclaims that he is offering any opinion about what he would have done or what Dr. Walia would have done in Mr. McWilliams' case based on available information today:

> Q. I want to make sure you're not offering the opinion that prescribing nilotinib was not an appropriately available option to Dr. Walia.
>
> A. I'm not making an opinion on any prescription that Dr. Walia made … to this patient.
>
> Q. So if Dr. Walia prescribed nilotinib, you would have no quibble or complaint about that; correct?

. . .

THE WITNESS:  Yeah, I wasn't asked to assess the particular treatment by Dr. Walia of Mr. McWilliams.  And because I didn't have a complete medical record, even if I wanted to, I would be unable to offer an opinion.

4/24/18 Weiss Dep. 185:5-24 (Ex. 5); *see also id.* 187:23 – 188:10 ("I don't have enough information to formulate an opinion on" whether Dr. walia's decision to not maintain imatinib was right or wrong); 7/14/17 Weiss Dep. 233:14 – 234:7 (Ex. 3) ("I believe only a physician directly caring for the patient who has physically seen them and examined them and talked to them is an appropriate person to make the specific medical recommendation to a specific patient.").

Dr. Weiss testified that in his view the process of evaluating the options and making a decision on therapy is a patient-specific decision:

Q.  Is it true that a prescribing decision is a patient-specific determination?

A.  The – in my mind, the appropriate way to make a decision is it needs to be patient-specific."

*Id.* at 115:23 – 116:3.

Although Dr. Weiss generally disclosed that he looked at "medical oncology records," he failed to identify any of Mr. McWilliams' medical records in his bibliography, and he could not identify what records he reviewed.  4/24/18 Weiss Dep. 13:14-24, 43:7-23 (Ex. 5).  Dr. Weiss admitted that he does not know if he reviewed or was sent the entire medical oncology record for Mr. McWilliams.  *Id.* 45:24 – 46:7, 48:22 – 49:2.  He did not select what records to review, and he did not have independent access to the records, which he assumes were selected by plaintiffs' counsel.  *Id.* 47:5-20.  Although he recalled reviewing oncology records from Dr. Sanjiv Walia and Dr. John Wingard, he cannot say whether those constituted the entire medical oncologic history of Mr. McWilliams.  *Id.* 49:15 – 50:19; *see also id.* 51:21 – 52:9 (believes records had Bates numbers, but did not disclose which Bates ranges he looked at).

When asked about the decision to prescribe Tasigna to Mr. McWilliams in 2011, Dr. Weiss declined to provide a nexus between his general testimony and Mr. McWilliams' case:

Q.  So it is possible that Dr. Walia did something that is within the realm of -- of permissible options, in your opinion, when 15 he prescribed nilotinib in May 2011?

9

A. Yes, I think I would rather phrase it that it's possible that for a generic patient who has one, there are several options and -- but there are options other than nilotinib. I say it right --

Q. Yeah.

A. -- there.

Q. And nilotinib is also an accepted option; correct?

. . .

THE WITNESS: Are you asking this specific patient or in general patients?

. . .

Q. Well, you already told me that you don't know enough about this specific patient to offer an opinion; right?

A. Correct.

*Id.* at 188:12–189:8.[4]

Dr. Weiss' opinion about the prescribing options and decision should be excluded here because, by his own admission, he failed to undertake a review of the materials necessary to form a reliable opinion on the issue of whether Mr. McWilliams would have been prescribed Tasigna had a different warning been provided. *See Rolen v. Hansen Bev. Co.*, 193 F. App'x. 468, 471, 474 n.4 (6th Cir. 2006) (medical causation opinion excluded as unreliable where expert's differential diagnosis relied on patient history). Dr. Weiss' generalized testimony will not "assist the trier of fact" to determine the "fact in issue" – whether Dr. Walia would not have prescribed Mr. McWilliams Tasigna had he received a different warning in 2011 – and should be excluded. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591-92; *see also Joiner*, 522 U.S. at 146 (finding expert testimony unreliable based on "analytical gap" between data and conclusions).

---

[4] *See also id.* 206:5-22 ("Q. Are you suggesting that having prescribed Tasigna to Mr. McWilliams in June of 2011, that at some point between then and when he prescribed Sprycel in September of 2013, Dr. Walia should have switched Mr. McWilliams to bosutinib? … A. Yeah, again, because I don't have the patient's complete medical record, I cannot offer an opinion on the specific prescribing decisions made by Dr. Walia or others.").

III.  **DR. WEISS SHOULD BE PRECLUDED FROM TESTIFYING ABOUT THE
      ADEQUACY OF TASIGNA'S WARNING BECAUSE HE LACKS THE
      NECESSARY QUALIFICATIONS AND FAILED TO APPLY A RELIABLE
      METHODOLOGY.**

Plaintiffs have not met their burden to establish the admissibility of any opinion by Dr.
Weiss about the adequacy of Tasigna®'s labeling under *Daubert* and Rule 702, especially where
Dr. Weiss admits that he has never been involved with FDA about the labeling of any medication
and that he has never reviewed any company's labeling submissions to FDA.  7/14/17 Weiss
Dep. 94:13-21 (Ex. 3); *see also id.* at 216:16-19 (plaintiffs' counsel stating Dr. Weiss is "not an
expert on FDA regulations").  Because Dr. Weiss lacks the qualifications in FDA regulations or
labeling practices to assess whether the warnings were adequate, any opinions on that matter
should be excluded.  *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 611-12 (7th
Cir. 2002) (upholding district court's exclusion of expert testimony when purported expert
admitted at deposition that he was not expert in the subject he relied on to form his conclusion);
*Thomas*, 2005 WL 6133409, at*14 (striking expert's opinion that a warning was "defective"
because, *inter alia*, he was not an expert in designing that type of warning); *Francois v. Colonial
Freight Sys., Inc.*, No. 3:06-cv-434-WHB-LRA, 2008 WL 80399, at *2-3 (S.D. Miss. Jan. 4,
2008) (limiting expert's opinions to clinical psychology and not neuropsychology when expert
testified he was not expert in field of neuropsychology).

Dr. Weiss' opinion about the adequacy of Tasigna's warning should also be excluded
because, other than the U.S. labeling, the only other documents cited in this section of his report
are a Canadian health authority signal assessment for Tasigna and a communication to Canadian
health care professionals.  Weiss Report 11-12 (Ex. 1).  In explaining his opinion in response to a
question from plaintiffs' counsel, Dr. Weiss cited the communication to Canadian health care
professionals as support for why he thought a "Dear Healthcare Professional" letter should have
been sent in the United States.  7/14/17 Weiss Dep. 249:1-16 (Ex. 3).  Dr. Weiss has based his
labeling opinions on activities in Canada even though he testified that he does not hold himself
out as an expert in the regulation of medications in Canada.  *Id.* at 203:19-24.

Dr. Weiss' report discusses no scientific articles regarding stroke published before June
2011 when Dr. Walia prescribed Tasigna.  Dr. Weiss could not identify any particular article.
4/24/18 Weiss Dep. 330:25-331:12. That is because there were no articles prior to 2013 reporting
strokes in patients receiving Tasigna.  *See* Mot. Summary J., Summary of the Case § II (Medical

Literature).  When asked his basis for concluding that a Warning and Precaution about cerebrovascular events should have been added to Tasigna's labeling in 2011, he stated, "I don't have a specific memory of which of the many articles that I read or that I've been shown said it. I'm giving you a gestalt of what I had."  4/24/18 Weiss Dep. 340:20 – 341:4 (Ex. 5); *see also id.* at 342:13-18 ("I have a gestalt that I did see some data. I cannot regurgitate it for you at this time.").

Dr. Weiss could not provide at his deposition language that in his mind would have made an adequate warning for Tasigna.  7/14/17 Weiss Dep. 217:10 – 218:21 (Ex. 3) (stating Canada label and communication "might be a reasonable starting point").  Dr. Weiss has no relevant expertise and has applied no methodology that would be helpful to the jury in evaluating how a labeling decision made under Canada's regulations is relevant to activities under the United States' own regulatory scheme.  *See, e.g.*, *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) ("The party seeking to have the testimony admitted bears the burden of showing that the expert's findings are based on sound science, and this will require some *objective, independent validation* of the expert's methodology; *the expert's bald assurance of validity is not enough*.") (emphasis added and internal quotations omitted).[5]

Dr. Weiss' opinions based on his review of Canadian-related documents[6] should also be excluded because those documents are not relevant and will confuse and mislead the jury.  *See also* NPC's MIL No. 2 (moving to exclude communications with foreign regulators).  Moreover, Dr. Weiss also should not be permitted to opine about specific warnings for the Tasigna® label (specifically location of the PAOD warning, and use of a black box warning and Dear Healthcare Provider letter) as such argument is preempted by federal law.  *See* NPC's MIL No. 1.  Finally,

---

[5] *See also, e.g.*, *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Frazier*, 387 F. 3d at 1262-63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *Thomas* 2005 WL 6133409, at *5.

[6] Dr. Weiss disclosed at his deposition that he was shown some emails by plaintiffs' counsel and that at least one was related to a Health Canada interaction.  7/14/17 Weiss Dep. 204:11-24 (Ex 3).  Those materials were not disclosed in his report.  *Id.* at 204:25 – 205:2. Although Dr. Weiss claims that they do not form the basis for his opinion, *id.* at 205:3-9, NPC seeks to preclude Dr. Weiss from testifying about any e-mails or records that he reviewed for this case that are not listed within his reports as required pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(ii).

Dr. Weiss should be precluded from offering legal conclusions regarding the adequacy of Tasigna's labeling.  *See* NPC's MIL No. 5.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this motion and exclude Dr. Weiss' expert testimony on the topics enumerated in his report.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

Counsel for NPC has conferred with counsel for plaintiffs regarding the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated:  May 21, 2018                                   Respectfully submitted,

                                                                      s/ Michael J. Thomas
                                                                      Michael J. Thomas
                                                                         PENNINGTON MOORE WILKINSON
                                                                         BELL & DUNBAR
                                                                         215 South Monroe Street, 2nd Floor
                                                                         Tallahassee, FL 32301
                                                                         Phone: 850-222-3533
                                                                         Fax: 850-222-2126
                                                                         mike@penningtonlaw.com

                                                                      Robert E. Johnston (admitted *pro hac vice*)
                                                                      (rjohnston@hollingsworthllp.com)
                                                                      Andrew L. Reissaus (admitted *pro hac vice*)
                                                                      (areissaus@hollingsworthllp.com)
                                                                         HOLLINGSWORTH LLP
                                                                         1350 I Street, NW
                                                                         Washington, DC 20005
                                                                         Phone:  (202) 898-5800
                                                                         Fax:  (202) 682-1639

                                                                      *Attorneys for Defendant*
                                                                      *Novartis Pharmaceuticals Corporation*

13

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 21, 2018, the foregoing was filed with the Clerk of the Court and served in accordance with the Southern District of Florida's Rules on Electronic Service upon the following parties and participants:

Bryan F. Aylstock, Esq.
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Miami, FL  33130

Richard M. Elias, Esq.
Greg G. Gutzler
Tamara M. Spicer
ELIAS GUTZLER SPICER LLC
130 South Bemiston Avenue, Suite 302
St. Louis, MO  63105

James G. Onder
Evan Murphy
ONDER LAW
110 East Lockwood
St. Louis, MO

s/ Michael J. Thomas
Michael J. Thomas