UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 2:17-CV-14302-ROSENBERG/MAYNARD

Dennis McWilliams et al.,

        Plaintiffs,

vs.

Novartis AG et al.,

        Defendants.
_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. ROBERT WAGMEISTER**

**INTRODUCTION**

    Novartis argues that Dr. Robert Wagmeister, a licensed vascular surgeon with over 30 years of clinical experience, is unqualified to opine on causation and that his differential diagnosis is invalid. Novartis neglects to mention, however, that its arguments have already been rejected by another federal court evaluating Dr. Wagmeister's qualifications and his identical methodology in the *Lauris v. Novartis* case pending in the Eastern District of California (Case No. 1:16-cv-00393-SEH).

    As the *Lauris* court held, Dr. Wagmeister, who has diagnosed and treated *thousands* of patients with atherosclerotic peripheral artery and cerebrovascular disease, is qualified to employ a differential diagnosis to assess the cause of Mr. McWilliams' stroke. His methodology based on his review of the medical records, the relevant literature, and his over 30 years of clinical experience has been approved by federal courts on multiple occasions. For the same reasons, as explained below, Novartis's motion should be denied in this case as well.

## **ARGUMENT**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court and the Eleventh Circuit have interpreted Rule 702 to require that expert testimony be both relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *U.S. v. Cox*, 391 Fed. Appx. 756, 759 (11th Cir. 2010). The basic standard of relevance is a liberal one. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016).

In evaluating the reliability of scientific expert testimony, a district court must assess whether the methodology underlying the testimony is scientifically valid and whether it properly can be applied to the facts in issue. *U.S. v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013). When the methodology is sound and the evidence relied upon is sufficiently related to the case at hand, disputes about the degree of relevance or accuracy may go to the testimony's weight, but not its admissibility. *Id.*

The focus of the district court's analysis must be "solely on principles and methodology, not on the conclusions that they generate." *Seamon*, 813 F.3d at 988 (quoting *Daubert*, 509 U.S. at 595). An expert's methodology "need not be perfect, nor need he apply it perfectly." *Sampson v. Carnival Corp.*, No. 15-24339, 2016 WL 7377226, at *6 (S.D. Fla. Dec. 16, 2016).

The Court's inquiry is a flexible one, recognizing that Rule 702 "was intended to liberalize the introduction of relevant expert evidence." *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1340 (S.D. Fla. 1999).

### I.      Dr. Wagmeister Is Qualified.

Dr. Wagmeister is a vascular surgeon who has been continuously licensed in the State of California since 1983.  Doc. No. 60-1, Wagmeister Report, at 1.  Nevertheless, Novartis claims he is unqualified to opine about the cause of Mr. McWilliams' severe and rapidly developing vascular disease and the cause of his stroke.  This argument is meritless, as the *Lauris* court already determined.  *See* Exhibit 1, Transcript of 11/17/17 Motions Hearing in *Lauris*, at 114-15 (court recognizing "formidable" group of experts, including Dr. Wagmeister, who are "well-qualified individuals in terms of knowledge, training, background, and experience, who meet, in the view of this Court, the basic qualifications for testimony, as experts under the federal rules of evidence"); Exhibit 2, 11/17/17 Order denying Novartis's Motion to Exclude Testimony of Dr. Robert Wagmeister, at ¶ 5.

Rule 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The rule "contemplates a *broad conception* of expert qualifications."  *Goins v. Royal Caribbean Cruise, Ltd.*, No. 16-21368, 2017 WL 5891469, at *2 (S.D. Fla. May 31, 2017) (citations omitted).  The advisory committee notes to Rule 702 emphasize that the rule is "broadly phrased and intended to embrace more than a narrow definition of qualified expert."  *Id.*  Accordingly, the threshold for qualification is low. *Waite v. All Acquisition Corp.*, 194 F. Supp. 3d 1298, 1310 (S.D. Fla. 2016).

Under this broad standard, this Court has rejected the notion that a doctor's testimony must be limited to his or her specialty: A proffered expert physician "need not be a specialist in a

3

particular medical discipline to render expert testimony relating to that discipline." *Galarza v. Carnival Corp.*, No. 15-24380, 2016 WL 7507883, at *7 (S.D. Fla. Aug. 8, 2016) (quoting *Gaydar v. Sociedad Instituto Gineco-Quirugico y Planificacion*, 345 F.3d 15, 24-25 (1st Cir. 2003). "A witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Galarza*, 2016 WL 7507883, at *7 (quoting *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013)). In *Taylor v. Novartis Pharmaceuticals Corp.*, for example, this Court held that the proffered expert's experience as an oncologist and hematologist sufficiently qualified him to opine on the biological mechanism through which bisphosphonates affect jaw bones, even though he admitted he was not an expert on bone physiology. No. 06-61337, 2013 WL 5118945, at *6 (S.D. Fla. Apr. 22, 2013).

Multiple other courts are in accord. *See Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir. 1992) (reversing the trial court for excluding several experts' testimony regarding AIDS because they did not specialize in hematology: "The fact that the experts were not licensed hematologists does not mean they were testifying beyond their expertise."); *Gaydar v. Sociedad Instituto Gineco-Quirugico y Planificacion*, 345 F.3d 15, 24-25 (1st Cir. 2003) (noting it would have been an abuse of discretion for the court to exclude doctor's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics); *United States v. Vigilia*, 549 F.2d 335, 336 (5th Cir. 1977) (pediatrician with no background on treating obesity allowed to testify about the effect of drug on obese people).

Here, Dr. Wagmeister is qualified to render his opinions, as the issues he is offering testimony about—i.e., the cause of Mr. McWilliams' vascular disease—are precisely the specialty that he has devoted over 30 years of practice to. Dr. Wagmeister has diagnosed and

4

treated thousands of patients with atherosclerotic peripheral vascular and cerebrovascular disease who have suffered symptoms of intermittent claudication, rest pain, ischemic ulcers, and stroke. Doc. No. 60-1, Wagmeister Report, at 1.  He has performed thousands of procedures to treat cerebrovascular disease, including carotid endarterectomies (the surgical procedure that Mr. McWilliams required following his 2013 stroke) and adrenal artery operations.  Doc. No. 60-3, 7/6/17 Deposition of Robert Wagmeister, at 25:6-10.  It is hard to fathom a more qualified expert to offer opinions related to Mr. McWilliams' vascular disease than Dr. Wagmeister.

Novartis argues he is unqualified to offer opinions about Mr. McWilliams' cerebrovascular disease because the disease presented in his carotid arteries, and Dr. Wagmeister has not operated on those arteries recently.  But the fact that he does not currently perform a carotid artery endarterectomy regularly does not render him unqualified to offer opinions about disease in the carotid arteries.  *See Galarza*, 2016 WL 7507883, at *7 (experts do not need to specialize in a particular field to be qualified).  Dr. Wagmeister confirmed in his deposition that he has a "full understanding of the entire vascular system of the body, including all organs related to arteries that perfuse those organs," including "intracranial arteries."  Doc. No. 60-3, Wagmeister 7/6/17 Dep. at 160:1-9; *see also id.* at 160:10-21 ("As a busy clinical vascular surgeon for the last several decades, I've witnessed, diagnosed, evaluated in consultations, collaborative efforts, and treated with surgery all facets of the arterial venous system in the body, including a significant number of carotid endarterectomies ….").

For these reasons, Dr. Wagmeister is qualified to offer opinions on the cause of Mr. McWilliams' vascular disease and stroke.

**II.     Dr. Wagmeister Employed a Reliable Differential Diagnosis.**

Novartis admits that a reliable differential diagnosis may form the basis of an expert's causation opinion. Mot. at 6-7. A differential diagnosis is "a process of elimination" in which the cause of a medical problem is identified by eliminating the likely causes until the most likely one is isolated. *Southern States Co-op., Inc. v. Melick Aquafeeds, Inc.*, 476 Fed. Appx. 185, 188 (11th Cir. 2012). A reliable differential diagnosis typically utilizes diagnostic tests, including physical examinations and the analysis of medical histories, clinical tests, and laboratory tests. *Brasher v. Sandoz Pharms. Corp.*, 160 F. Supp. 2d 1291, 1297 (N.D. Ala. 2001).

In this case, Dr. Wagmeister performed a differential diagnosis and considered all the potential causes of Mr. McWilliams' accelerated, severe vascular disease, including his smoking history, hypertension, family history, age, weight, hyperlipidemia, and Tasigna. Doc No. 60-1, Wagmeister Report, at 4-11. Applying his medical training, and his over 30 years of clinical experience, he concluded that Tasigna was the cause, as none of the other general risk factors explained the rare form of accelerated, severe, and diffuse atherosclerotic-related conditions that occurred in Mr. McWilliams, and the unusual syndrome that he developed is consistent with cases reported in retrospective and prospective studies involving Tasigna. *Id.*

Novartis nonetheless claims Dr. Wagmeister did not apply a reliable methodology. But the *Lauris* court has already held otherwise. *See* Exhibit 1, Transcript of 11/17/17 Motions Hearing in *Lauris*, at 118-19 ("The assertions that [Dr. Wagmeister] did not do the necessary background, checking, research, other assessments that were necessary, in view of the Court, go to weight, not to admissibility."); *see also id.* at 119 (allowing Dr. Wagmeister to testify that the administration of Tasigna led to Mr. Lauris's stroke, which in turn led to his death); Exhibit 2,

6

11/17/17 Order denying Novartis's Motion to Exclude Testimony of Dr. Robert Wagmeister, at ¶ 5.[1]

Other Eleventh Circuit courts, including this one, have rejected similar attempts by Novartis. *See, e.g.*, *Taylor v. Novartis Pharms. Corp.*, No. 06-61337, 2013 WL 85168, at *6-7 (S.D. Fla. Jan. 7, 2013) (denying Novartis's motion to exclude specific causation expert who conducted a proper differential diagnosis); *Kirchman v. Novartis Pharms. Corp.*, No. 8:06-cv-1787-T-24-TBM, 2014 WL 2158517, at *6-7 (M.D. Fla. May 23, 2014) (same); *Dopson-Troutt v. Novartis Pharms. Corp.*, No. 8:06-cv-1708-T-24EAJ, 2013 WL 12184290, at *1 (M.D. Fla. Mar. 14, 2013) (same); *Chiles v. Novartis Pharms. Corp.*, No. 3:05-cv-96-J-15, 2013 WL 5769903, at *5 (M.D. Fla. Feb. 7, 2013) (same).

Indeed, Novartis's argument is fundamentally flawed because a reliable differential diagnosis "need not rule out all possible alternative causes." *Sampson*, 2016 WL 7377226, at *3. As the *Brasher* court explained, a debate about alternative causes goes to weight not admissibility:

> The causation opinions expressed by plaintiffs' experts are not made unreliable or inadmissible simply because it may be debatable whether there were other possible causes for plaintiffs' strokes [such as obesity, smoking history, and hyperlipidemia].… The debate creates a question about the weight to be accorded the plaintiffs' experts' opinions, but it does not affect the admissibility.

160 F. Supp. at 1297-99.

In *In re Trasylol Products Liability Litigation*, this Court discussed what suffices for a differential diagnosis to be reliable, and rejected the very arguments Novartis makes here. No. 08-MD-01928, 2010 WL 8354662, at *9-14 (S.D. Fla. Nov. 23, 2010). There, the plaintiff sued Bayer for failing to warn of the dangers inherent in the use of a Bayer drug, Trasylol. *Id.* at *2-3.

---

[1] Dr. Wagmeister's methodology in *Lauris* is identical to his methodology in the case at hand. *Compare* Wagmeister Report in *McWilliams*, Doc. No. 60-1, to Wagmeister Report in *Lauris*, attached hereto as Exhibit 3.

7

The plaintiff's specific causation expert, a physician specializing in nephrology and internal medicine, did a differential diagnosis and concluded that the drug was a substantial contributing cause to the decedent's acute renal dysfunction, which in turn was a major contributing factor to her death. *Id.* at *8. In so concluding, the expert relied on his extensive clinical experience. *Id.* at *7. The court rejected Bayer's attack on the differential diagnosis, citing the expert's "methodic review" of the medical records, the testimony of the treating physicians, and the medical literature in order to reach his conclusions. *Id.* at *12-13.

Bayer, like Novartis here, argued that the expert failed to sufficiently rule out the decedent's various risk factors, including advanced age, hypertension, and chronic kidney disease. *Id.* at *11. The doctor methodically eliminated many of these alternate risk factors, but was unable to exclude all of them. *Id.* at *13. But this did not change his opinion that the drug was a substantial contributing cause, particularly where a large volume of medical literature showed an association between the drug and the condition at issue. *Id.* at *8. Following Eleventh Circuit precedent, the Court held, "The fact that [the expert] did not rule out *all* of the other risk factors for [decedent's acute kidney injury] is insignificant for determining the admissibility of [the] expert testimony." *Id.* at *13; *see also id.* at *16. The Court explained that Bayer's demand for "absolute, quantifiable answers" regarding the contribution of each risk factor was an unreasonable request for scientific precision that does not exist. *Id.* at *13-14. The Court concluded that Bayer's arguments regarding alternative causes and comorbidities went to the credibility of the expert's testimony but not its admissibility. *Id.* at *16; *see also Taylor*, No. 2013 WL 85168, at *7 (noting cross-examination is the appropriate vehicle to challenge a differential diagnosis that considered other potential causes but determined the drug was the likely cause).

Following this authority, Dr. Wagemister's opinions are reliable. He conducted a differential diagnosis and considered all the risk factors relevant to Mr. McWilliams. In so doing, he applied his clinical experience (which includes diagnosing and treating thousands of patients with cerebrovascular disease), his knowledge of Mr. McWilliams' medical history, and his review of the extensive medical literature describing the association between Tasigna and accelerated vascular disease. As a result of this differential diagnosis, he has concluded that Tasigna was the cause.

Novartis argues that Dr. Wagmeister has not adequately explained how he ruled out general risk factors in reaching his conclusion that Tasigna caused Mr. McWilliams' vascular disease. This is incorrect. First, as Dr. Wagmeister explained in his report, any atherosclerotic disease in anyone under the age of 50 is rare. Doc. No. 60-2, Wagmeister Rebuttal Report, at 4. Epidemiological data shows that the annual incidence of stroke in white males ages 45 to 54 in the United States is 0.11%. *Id.* Indeed, in over 37 years of practice treating thousands of patients with vascular disease and performing over a thousand carotid endarterectomies, Dr. Wagmeister cannot recall ever having a patient under 50 with critical stenosis of his or her carotid artery secondary to atherosclerosis that resulted in a stroke. *Id.* at 9.

Further, as Dr. Wagmeister explained, not only was the condition rare, but the clinical progression of Mr. McWilliams' vascular disease was highly unusual. Doc. No. 60-1, Wagmeister Report, p. 10; Doc. No. 60-2, Wagmeister Rebuttal Report, at 5-6. Atherosclerosis is a slowly progressing disease, and rapid onset, accelerated progression, or sudden aggravation of the disease is extremely rare. Doc. No. 60-1, Wagmeister Report, at 2. Mr. McWilliams' medical test results show that, as of January 2013, he had no significant stenosis in his left internal carotid artery and mild atherosclerotic plaques in the right common and proximal carotid

arteries.  *Id.* at 3.  At that time, he was not at risk of having a stroke.  *Id.*  But approximately seven months later Mr. McWilliams was rushed to the emergency room while suffering a stroke.  *Id.*  Test results revealed a critical stenosis in his right internal carotid artery of over 90% with a string sign (meaning the artery was almost completely blocked), requiring a right carotid endarterectomy with patch angioplasty to remove the blockage and prevent a recurrent stroke.  *Id.*

As Dr. Wagmeister stated in his report, the "progression that we observed in this case is inconsistent with the expected natural history of the disease."  Doc. No. 60-2, Wagmeister Rebuttal Report, at 5.  Mr. McWilliams' treating vascular surgeon and neurologist shared the same view that the progression was "unusual" and "unexpected."  *Id.* at 5-6.  But Dr. Wagmeister notes that it was "strikingly consistent with the numerous published studies and reports of individuals on Tasigna developing an accelerated form of atherosclerosis."  *Id.* at 6.  As Dr. Wagmeister opines, general risk factors, such as smoking history and hypertension, simply do not adequately explain the unusual course of Mr. McWilliams' vascular disease.  *Id.* at 6-8; Doc. No. 60-1, Wagmeister Report, at 10.  Thus, Dr. Wagmeister's opinion is not, as Novartis contends, *ipse dixit*, but based on a careful analysis of objective evidence from the medical file and peer-reviewed literature, indicating that Tasigna caused Mr. McWilliams' vascular disease.  Under the case law, this methodology—the rational, logical process of a vascular specialist with over 30 years of clinical experience—is clearly reliable.  While Novartis may not like Dr. Wagmeister's conclusions, that is an issue for the jury.

Novartis makes much over the fact that Dr. Wagmeister has testified as an expert before, and did not develop his opinions about Mr. McWilliams independent of the litigation.  But, as Dr. Wagmeister testified, the legal consulting he does constitutes about five percent of his

professional practice, he testifies roughly equally for plaintiffs and defendants, and he only does so after independently assessing the case for merit. Doc. No. 60-3, Wagmeister 7/6/17 Dep., at 26:9-29:3. Further, none of the experts proffered by any party has formed their opinions about Mr. McWilliams independent of litigation. Indeed, this fact is not dispositive. *Rigdon v. Georgia Bd. of Regents*, No. CV406-240, 2009 WL 10678336, at *3 (S.D. Ga. Jan. 13, 2009).

## CONCLUSION

For these reasons, Novartis's motion to exclude Dr. Wagmeister's testimony should be denied.

**Dated:** June 4, 2018                    Respectfully submitted,

/s/ Bryan F. Aylstock_____
Bryan F. Aylstock, Esq. (Bar No. 0078263)
baylstock@awkolaw.com
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 E. Main Street, Suite 20
Pensacola, Florida 32502
Phone: (850) 2020-1010
Fax: (850) 916-7449

**ELIAS GUTZLER SPICER LLC**
Richard M. Elias, admitted *pro hac vice*
Greg G. Gutzler, admitted *pro hac vice*
Tamara M. Spicer, admitted pro *hac vice*
130 South Bemiston Avenue, Suite 302
St. Louis, Missouri 63105
Telephone: (314) 274-3311
relias@egslitigation.com
ggutzler@egslitigation.com
tspicer@egslitigation.com

**ONDER SHELTON O'LEARY PETTERSON LLC**
James G. Onder, admitted *pro hac vice*
Evan C. Murphy, admitted *pro hac vice*
110 East Lockwood
St. Louis, Missouri 63119
Telephone: (314) 363-9000

onder@onderlaw.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2018 the foregoing document was served upon counsel of record via electronic mail.

/s/ Bryan F. Aylstock
Bryan F. Aylstock