UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 2:17-CV-14302-ROSENBERG/MAYNARD

Dennis McWilliams et al.,

        Plaintiffs,

vs.

Novartis AG et al.,

        Defendants.
_____/

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK WEISS

## INTRODUCTION

Dr. Mark Weiss is being offered to provide the following opinions:

- There are plausible mechanisms of action supporting the hypotheses that Tasigna is causally associated with accelerated atherosclerotic-related events (Doc No. 59-1, p. 1);

- Given the risk of vascular events associated with Tasigna, there are safer and better-suited alternatives for a *fully informed* oncologist to choose from for patients with atherosclerotic disease risk factors, such as diabetes and hypertension (*Id.*); and

- The Tasigna label in effect at the time that Dainis Lauris was on the drug did not adequately inform oncologists of the associated vascular risks.

Novartis's arguments for exclusion of this testimony have already been rejected by another federal court evaluating Dr. Weiss's qualifications and his identical opinions in the *Lauris v. Novartis* case pending in the Eastern District of California (Case No. 1:16-cv-00393-

SEH). For the same reasons, as explained below, Novartis's motion should be denied here as well.

## ARGUMENT

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court and the Eleventh Circuit have interpreted Rule 702 to require that expert testimony be both relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *U.S. v. Cox*, 391 Fed. Appx. 756, 759 (11th Cir. 2010). The basic standard of relevance is a liberal one. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016).

In evaluating the reliability of scientific expert testimony, a district court must assess whether the methodology underlying the testimony is scientifically valid and whether it properly can be applied to the facts in issue. *U.S. v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013). When the methodology is sound and the evidence relied upon is sufficiently related to the case at hand, disputes about the degree of relevance or accuracy may go to the testimony's weight, but not its admissibility. *Id.*

The focus of the district court's analysis must be "solely on principles and methodology, not on the conclusions that they generate." *Seamon*, 813 F.3d at 988 (quoting *Daubert*, 509 U.S.

at 595).  An expert's methodology "need not be perfect, nor need he apply it perfectly." *Sampson v. Carnival Corp.*, No. 15-24339, 2016 WL 7377226, at *6 (S.D. Fla. Dec. 16, 2016). The Court's inquiry is a flexible one, recognizing that Rule 702 "was intended to liberalize the introduction of relevant expert evidence." *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1340 (S.D. Fla. 1999).

**I.       Dr. Weiss Is Qualified.**

Novartis does not challenge Dr. Weiss's qualifications.  *See* Exhibit 1, Transcript of 11/17/17 Motions Hearing in *Lauris*, at 82 ("We do not have a significant challenge to Dr. Weiss as to his qualifications.  He is a qualified oncologist hematologist.").  Indeed, Dr. Weiss is a specialist in adult leukemia.  Doc. No. 59-1 at 1.  He obtained his medical degree from Cornell University Medical Center, and subsequently completed an internal medicine residency, including one year as chief resident, at Vanderbilt University Medical System.  *Id.*  From 1987 to 1990, he performed subspecialty fellowship training in medical oncology and hematology at Memorial Sloan-Kettering Cancer Center in New York City, one of the leading cancer centers in the world.  *Id.*

Following his fellowship, he joined the faculty on the Leukemia Service at Memorial Sloan-Kettering Cancer Center, where he was a clinical investigator and practicing physician caring for adult patients with leukemia.  *Id.* at 1-2.  During this time, he participated in the treatment of well over one thousand adult patients with various types of leukemia, including hundreds of patients with chronic myelogenous leukemia (CML).  *Id.* at 2.

After spending 22 years at Memorial Sloan-Kettering, in 2009, he became the inaugural director of the Division of Hematologic Malignancies and Hematopoietic Stem Cell Transplantation at Thomas Jefferson University in Philadelphia.  *Id.*  In this position, he led a

3

group of 15 physicians dedicated to research, treatment, and education in this field. *Id.* A major focus of his division's work was on the research and treatment of adults with leukemia, including CML. *Id.* Dr. Weiss retired in June 2016. *Id.*

During his 25-plus years in academic medicine, he has taught and published extensively regarding the treatment of leukemia as well as other hematologic cancers, including having co-authored a chapter in three editions of Cancer: Principles and Practice of Oncology—the reference textbook for cancer treatment. *Id.*

**II.     Dr. Weiss's Opinions on Plausible Mechanisms Are Reliable and Admissible.**

The starting point in this case is that there is an established association between Tasigna and atherosclerosis-related conditions. All of Novartis's retained witnesses on the issue concede this point. *See* Doc No. 54, Plaintiffs' Motion to Exclude Drs. Javid Moshlehi and Frank Giles, at 4-5 (describing their concessions about an association). Indeed, as Dr. Moshlehi writes in his report: "Today, the available data, including Novartis's data from ENESTnd [a Novartis-sponsored clinical trial], demonstrates an association between [Tasigna] and cardiovascular events such as vascular events." Doc. No. 54-4, at p. 5.

Plaintiffs' primary expert that will describe the statistical significance of this association to the jury and why that association is causal is epidemiologist Dr. Sonal Singh. Plaintiffs do not intend to duplicate this testimony with Dr. Weiss. But they do intend to offer Dr. Weiss to explain, as an expert hematologist who is familiar with the mechanisms of action of tyrosine-kinase inhibitors (TKIs) (including Tasigna) what the plausible mechanisms of action are. This testimony will help give the jury a better understanding of the causal association between Tasigna and accelerated atherosclerosis.

4

As Dr. Weiss explains, the medical literature describes multiple plausible mechanisms supporting the hypotheses that Tasigna, at a cellular level, causes accelerated atherosclerosis. Doc. No. 59-1, pp. 5-8. This includes:

- Evidence that Tasigna has off-target effects, inhibiting the growth of enzymes that are involved in ameliorating the effects of atherosclerosis, which suggests that Tasigna impairs the body's natural mechanisms to correct lack of blood flow caused by atherosclerosis. *Id.* at 6.

- A variety of ex-vivo (outside of a living organism or person) laboratory studies, which have shown inhibition of vascular endothelial cell proliferation (cells that make up the lining of the veins) and inhibition of angiogenesis (blood vessel formation). *Id.* at 5.

- Animal studies showing that Tasigna significantly decreased recovery of blood flow to the legs of mice and that the consequence of the reduced blood flow was a marked increase in limb necrosis in Tasigna-treated mice. The study found that Tasigna decreased the density of micro vessel formation and increased several pro-atherogenic processes. *Id.* at 5-6.

- Clinical trials showing that Tasigna raises blood sugar and cholesterol in humans, suggesting Tasigna has a metabolic effect that promotes atherosclerosis. *Id.* at 6-7.

The evidence of a pro-atherogenic effect are supported by case reports where, in one case, a Tasigna patient who developed disabling peripheral vascular disease and could not walk 100 meters while on Tasigna, was able to walk 100 km within *two weeks* of Tasigna discontinuation—a 100-fold increase. *Id.* at 7.

Dr. Weiss's testimony on plausible mechanisms is a rationale compliment to Dr. Singh's causation opinion, will be helpful to the jury, and should be permitted. Novartis faults Dr. Weiss for relying on case reports to support his conclusions. But the Eleventh Circuit recognizes that, although case studies alone ordinarily do not prove causation, they may support other proof of causation. *In re Stand 'N Seal Prods. Liab. Litig.*, 623 F. Supp. 2d 1355, 1374 (N.D. Ga. 2009) (citing *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1199 (11th Cir. 2002)). Here, no one is relying on any single case report. To the contrary, as discussed in Dr. Weiss's report, there is a mountain of statistical evidence from clinical trials, supported by observational studies, myriad case reports, and, at the molecular level, studies indicating plausible mechanisms. Dr. Weiss, as a qualified expert, should be allowed to describe the plausible mechanisms of action to the jury.

Indeed, the *Lauris* court already rejected Novartis's identical arguments. *See* Exhibit 2, 11/17/17 Order denying Novartis's Motion to Exclude Testimony of Dr. Weiss, at ¶ 4; Exhibit 1, Transcript of 11/17/17 Motions Hearing in *Lauris*, at 117-18 ("With the exception of noting the limitation that this witness is not going to be permitted, as other witnesses will not be permitted, to testify about matters relating to legal conclusions or legal issues, [Dr. Weiss] will be allowed to testify.").[1]

### III. Dr. Weiss's Opinion About Reasonable Alternatives Is Relevant and Admissible.

Dr. Weiss concludes that given Tasigna's association with accelerated atherosclerosis, for patients who have risk factors for atherosclerosis, there are safer alternatives drugs. Novartis does not challenge the accuracy or reliability of this opinion. Instead, they claim it is not relevant because Dr. Weiss did not tie it directly to Mr. McWilliams. This is incorrect, and this argument was likewise rejected in *Lauris*. *See* Exhibit 1, Transcript of 11/17/17 Motions

---

[1] Dr. Weiss's report in *Lauris* is virtually identical to his report in the case at hand. *Compare* Weiss Report in *McWilliams*, Doc. No. 59-1, to Weiss Report in *Lauris*, attached hereto as Exhibit 3.

6

Hearing in *Lauris*, at 117-18 (allowing Dr. Weiss to testify "that there were safer drugs available, not specific to this decedent, however, but that there were other medications available in the market that at least were appropriate for consideration").

As Dr. Weiss writes in his report, the choice of which TKI therapy to prescribe is exclusively that of the prescribing physician. Dr. Weiss does not presume to invade that province. But his testimony is directly relevant to this case because it will give the jury an important context as to what alternatives were available for Mr. McWilliams, particularly given his predisposing risk factors for atherosclerosis. His treating oncologist, Dr. Walia, had alternatives to Tasigna, but he prescribed Tasigna for Mr. McWilliams based on incomplete information. It will be helpful to the jury to hear from a leukemia specialist like Dr. Weiss that, for patients fitting a certain risk profile (i.e., Mr. McWilliams'), fully informed physicians generally consider safer alternatives such as Sprycel over Tasigna.

When it comes to relevancy, the basic standard is a liberal one. *Seamon*, 813 F.3d at 988 988. Dr. Weiss's testimony about reasonable alternatives logically advances an issue relevant to Novartis's failure to warn, and Plaintiffs request that it be deemed admissible just as it was in *Lauris*.

### IV.     Dr. Weiss's Opinion About the Adequacy of the Warning Is Reliable and Admissible.

Dr. Weiss is a hematologist and oncologist who has treated thousands of leukemia patients, including hundreds of CML patients. This, of course, required him to make daily risk/benefit analyses for patients based on warnings in the product labels for leukemia drugs, including TKIs. Dr. Weiss is the intended audience for those documents. He will testify that the label in place during Mr. McWilliams' time on Tasigna did not properly warn of the association between Tasigna and accelerated vascular disease. More specifically, he will testify that the

7

notation of "thrombosis" and "peripheral arterial occlusive disease" in section 6.2 of the label buried amongst 200-plus other events in small print on page 13 of 22 is wholly inadequate to convey the magnitude of the vascular risk associated with Tasigna. Doc. No. 59-1 at 13-14.[2] As the *Lauris* court already concluded, this testimony from a leukemia specialist experienced at making a risk/benefits analysis based on the information provided in the product label will be helpful to the jury and should be admitted. *See* Exhibit 1, Transcript of 11/17/17 Motions Hearing in *Lauris*, at 117-18 (allowing Dr. Weiss to testify regarding his opinion "that the label on this particular drug was in some manner lacking").

## CONCLUSION

For these reasons, Novartis's motion to exclude Dr. Weiss's testimony should be denied.

**Dated:** June 4, 2018          Respectfully submitted,

/s/ Bryan F. Aylstock_____
Bryan F. Aylstock, Esq. (Bar No. 0078263)
baylstock@awkolaw.com
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 E. Main Street, Suite 20
Pensacola, Florida 32502
Phone: (850) 2020-1010
Fax: (850) 916-7449

**ELIAS GUTZLER SPICER LLC**
Richard M. Elias, admitted *pro hac vice*
Greg G. Gutzler, admitted *pro hac vice*
Tamara M. Spicer, admitted pro *hac vice*
130 South Bemiston Avenue, Suite 302
St. Louis, Missouri 63105
Telephone: (314) 274-3311

---

[2] Novartis's attempt to segment the vascular risk associated with Tasigna and focus only on literature regarding stroke is nothing more than a red herring. Virtually all of the literature, health agency reports, and warning labels consistently address *all* vascular events as a group, implicating a global problem of accelerated atherosclerosis associated with Tasigna that can attack any number of vascular beds. This is the reason why Novartis is currently warning about the broad category of "vascular occlusive events" in its global product labels, and why Novartis sent a warning letter to Canadian doctors about the combined risk of atherosclerotic related events. Dr. Weiss is qualified to opine that Novartis should have done so much earlier.

relias@egslitigation.com
ggutzler@egslitigation.com
tspicer@egslitigation.com

**ONDER SHELTON O'LEARY PETTERSON LLC**
James G. Onder, admitted *pro hac vice*
Evan C. Murphy, admitted *pro hac vice*
110 East Lockwood
St. Louis, Missouri 63119
Telephone: (314) 363-9000
onder@onderlaw.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2018 the foregoing document was served upon counsel of record via electronic mail.

/s/ Bryan F. Aylstock  _____
Bryan F. Aylstock