UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No.: 2:17-cv-14302-ROSENBERG/MAYNARD

Dennis McWilliams and
Lori McWilliams,

               Plaintiffs,

vs.

Novartis AG, a Global Healthcare
Company; Novartis Pharmaceuticals
Corporation, a Delaware Corporation,

               Defendants.
_____/

**DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
TESTIMONY OF DR. WAGMEISTER, DR. WEISS, AND MR. HARPER**

Plaintiffs' *Daubert* oppositions for their retained case-specific experts[1] hinge on a belief that the Court's *Daubert* gatekeeping role is superficial and mechanical – if the witness has a medical degree and has worked as a physician for years (or in the case of Mr. Harper, an economics degree and associated work), then he is necessarily qualified to provide any medical (or economic) opinion, and if he states that he applied a methodology, then the testimony must pass muster as reliable. Plaintiffs ask this Court to apply the *Lauris* court's *Daubert* rulings regarding Drs. Weiss and Wagmeister. *See* Pls.' Weiss Opp. at 1-2, 6, 8; Pls.' Wagmeister Opp. at 1, 3. However, the *Lauris* court's *Daubert* rulings regarding Weiss and Wagmeister were based on its belief that the Ninth Circuit, in its application of *Daubert* and Rules 702-03, has followed a trend to allow "at least incremental expansion of permission to testify as experts at trial." 11/17/2017 Transcript of Motions Hearing (ECF 65-1), at 115:8-15. This Court should grant NPC's motions based on *Daubert*'s requirement that the trial court "act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005).

While plaintiffs focus on the *Lauris* court's rulings with regard to Weiss and Wagmeister, plaintiffs, in contrast, fail to mention the *Lauris* court's observation about "a fundamental problem" associated with retained economist testimony that is based on assumptions supplied by plaintiffs' counsel. 12/22/2017 Transcript of Motions Hearing at 78:24-80:18 (Ex. 1) ("I won't allow [an expert to testify on the basis of assumptions that come from a lawyer] because I think that violates my principle that a lawyer cannot be a witness and an advocate in the same case."). Harper's opinions likewise are unreliable, lacking foundation, and inadmissible because they are premised on multiple unsupported assumptions that Mr. Harper has adopted. NPC's Motion to Exclude the Testimony of Richard Harper (ECF 57) ("NPC's Harper Mot.") at § III (describing Harper's assumptions about life expectancy, McWilliams' ineligibility for rehiring, and medical expenses that plaintiffs' counsel identified for Harper to include). It is true that Harper is not a medical doctor, but contrary to plaintiffs' suggestion, Pls.' Harper Opp. at 6-8, that fact does not entitle Harper to rely on plaintiffs' counsel's supplied assumptions that are lacking foundation in

---

[1] Plaintiffs' Opposition to Novartis Pharmaceuticals Corporation's ("NPC's") Motion to Exclude the Testimony of Robert Wagmeister (ECF 66) ("Pls.' Wagmeister Opp."); Plaintiffs' Opposition to NPC's Motion to Exclude Testimony of Mark Weiss (ECF 67) ("Pls.' Weiss Opp"); Plaintiffs' Opposition to NPC's Motion to Exclude Testimony of Richard Harper (ECF 69) ("Pls.' Harper Opp.").

1

another medical expert's opinions.  Plaintiffs' citations to cases where economists calculated lost profits for businesses based on future business projections are inapposite because, among other reasons, an economist may in fact be qualified to project future business income or loss, but that is a different inquiry than projecting future wage income based on medical life expectancy.  *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1363 (11th Cir. 2010) (involving lost business profits, not medical expenses); *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062, at *1 (S.D. Fla. June 23, 2014) (same; opinions based on report pre-dating the events triggering the litigation).[2]

\*     \*     \*

NPC responds to the following specific points raised by plaintiffs' oppositions:

***"Reasonable Alternatives" Opinion.***  Plaintiffs suggest that Weiss should be permitted to opine generally about "safer alternative drugs" based on a "liberal" requirement for relevancy.  Pls.' Weiss Opp. at 6.  Plaintiffs' own opposition demonstrates that Weiss' proposed generalized testimony about potential alternatives to Tasigna® therapy lacks the required fit to the facts of this case.  Plaintiffs wish to have Weiss tell the jury that "fully informed physicians generally consider safer alternatives such as Sprycel over Tasigna."  *Id.*  McWilliams himself, however, admits that he could not tolerate Sprycel therapy due to recurrent pleural effusions.  *See, e.g.,* Declaration of Dennis McWilliams (ECF 64-44) ¶ 10 (McWilliams explaining that he had to stop Sprycel due to pleural effusions).  As a result, this testimony is unhelpful to the jury, and also misleading – as there is no dispute that McWilliams could not tolerate Sprycel therapy due to recurrent pleural effusions requiring hospitalizations.  NPC's Motion to Exclude the Testimony of Mark Weiss (ECF 59) ("NPC's Weiss Mot.") at 10-11.  Weiss himself testified at deposition that he has no opinion about which TKI medicine Dr. Walia should have prescribed to McWilliams, even taking

---

[2] Plaintiffs also mischaracterize NPC's challenge to Harper's qualifications.  Whether an economist has the qualifications to mathematically calculate pension benefits is not the issue here. The cases plaintiffs cite stand for the proposition that an economist may be qualified in a general sense to perform pension benefit calculations, *see* Pls.' Harper Opp. at 2-3, but Harper and plaintiffs have failed to identify any prior experience Harper has interpreting and applying Florida's DROP statute (as well as Section 185 benefits when the employee also is eligible for DROP).  Under *Daubert*, it is plaintiffs' burden to establish the qualifications and admissibility of their experts' proposed testimony.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Harper's inability to calculate McWilliams' pension benefits without consulting a third party about the interaction of the DROP and Section 185 statutes, demonstrates his lack of necessary qualifications to opine on the topic at issue in this case.  NPC's Harper Mot., at 3-4.

2

into account Weiss's knowledge of atherosclerotic events reported in patients treated with Tasigna®. *Id.* at 8-10 ("I wasn't asked to assess the particular treatment by Dr. Walia of Mr. McWilliams. And because I didn't have a complete medical record, even if I wanted to, I would be unable to offer an opinion.") (quoting 4/24/18 Weiss Dep. 185:5-24 (ECF 59-5)).

*Tasigna®'s "Plausible Mechanisms."* Plaintiffs state that Singh is their "primary expert" on causal association. Pls.' Weiss Opp., at p. 4. Plaintiffs' opposition regarding Weiss identifies a narrower issue about which plaintiffs seek to have Weiss testify, specifically "Plausible Mechanisms" by which Tasigna® causes "accelerated atherosclerosis." *Id.* at pp. 4-5. Plaintiffs provide four bullets generally describing those purported "plausible mechanisms." *Id.* at p. 5 (citing pp. 5-8 of the 2/20/18 Mark Weiss Expert Report (ECF 59-1) ("Weiss Report")). NPC has already explained why those opinions should be excluded as unreliable and lacking in support, as Weiss failed to identify relevant supporting literature. NPC's Weiss Mot., at 7-8.

To the extent Weiss bases particular causation opinions on case reports (in particular his opinion that Tasigna® causes "accelerated atherosclerosis"), his opinions are unreliable. Such reports "reflect only reported data, not scientific methodology. . . . Simply stated, case reports raise questions; they do not answer them." *See McClain* 401 F.3d at 1254. Plaintiffs concede that "case studies alone ordinarily do not prove causation". Pls.' Weiss Opp. at 6. Because plaintiffs' experts lack reliable evidence establishing causation of "accelerated atherosclerosis," any opinions regarding "accelerated" atherosclerosis should be excluded.

Although plaintiffs have not argued that Tasigna® caused McWilliams to develop diabetes, Weiss seeks to offer the general opinion that "[i]t is very likely that increased cholesterol levels and worsening (or developing) diabetes in part contributes to the increased risk of atherosclerotic disease in patients receiving nilotinib." Weiss Report at 7. If plaintiffs' experts do not attribute McWilliams' atherosclerosis to diabetes (or elevated blood sugars) or high cholesterol that was caused by Tasigna®, then Weiss' purported mechanism could not be the cause here. As a result, speculation about a diabetes- or cholesterol-based mechanism will necessarily be confusing and misleading to the jury. *See* Fed. R. Evid. 403.

3

***Ipse Dixit Differential Diagnosis.*** *Daubert* requires more than an expert's statement that he considered a potential risk and that he excluded it. *Guinn v. AstraZeneca Pharm., LP*, 602 F.3d 1245, 1252 (11th Cir. 2010) (excluding opinion as *ipse dixit* as "the only connection between the conclusion and the existing data is the expert's own assertions"). Here, Wagmeister simply dismisses the very serious and well-established alternative causes for atherosclerosis in a patient with McWilliams' extensive medical history based on *ipse dixit*, not based on any scientific tests or reasoning. *See* NPC's Motion to Exclude the Testimony of Robert Wagmeister (ECF 60) at 6-11. Plaintiffs rely on *In re Trasylol Products Liability Litigation*, but that case involved a very different factual scenario presented here. The *Trasylol* court declined to exclude the expert there for failure to quantify the impact of each of the plaintiff's risk factors for acute kidney injury "because this level of scientific precision for AKI does not exist." *In re Trasylol Prod. Liab. Litig.*, No. 08-CV-80419, 2010 WL 8354662, at *14 (S.D. Fla. Nov. 23, 2010). Here, however, there is ample literature quantifying the risk associated with the well-recognized major risk factors for cardiovascular disease and stroke – including for example the American Heart Association's comprehensive annual update on cardiovascular disease in the United States, *see* ECF 62-24.[3] Yet Wagmeister failed to cite a single article regarding the many established risk factors independent of Tasigna® that could explain McWilliams' stroke before he ruled them out based on his say so. *See* 2/20/18 Expert Report of Robert Wagmeister Report (ECF 60-1) at 5-6 (ruling out smoking, hypertension, age, family history, weight, and hyperlipidemia without reference to a single piece of medical literature). Wagmeister's failure to take into account the large amount of available data regarding risk factors, and thus adequately consider possible alternative causes for McWilliams' stroke, distinguishes this case from *In re Trasylol* and renders Wagmeister's differential diagnosis unreliable and inadmissible. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) (differential diagnosis for diabetes unreliable where expert failed to explain why stable pre-existing risk factors for diabetes did not put her at high risk).

Plaintiffs' citations (on page 7) to rulings in a different litigation permitting an oral surgeon to offer specific causation opinions regarding "bisphosphonate related osteonecrosis of the jaw" (BRONJ) do not support the conclusion that Wagmeister's differential diagnosis here is reliable.

---

[3] Stroke, in fact, is one of the leading causes of death in America. *See McClain*, 401 F.3d at 1243 (11th Cir. 2005) ("[S]troke is the third leading cause of death in America and the leading cause of disability.").

4

The litigation referenced by plaintiffs involved BRONJ, a condition for which a professional medical society developed a set of diagnostic criteria with "three elements to distinguish BRONJ from other ONJ or delayed healing conditions." *See Messick v. Novartis Pharm. Corp.*, 747 F. 3d 1193, 1196, 1198 (9th Cir. 2014) (describing diagnostic criteria). There is *no* diagnostic definition here for "Tasigna®-related atherosclerosis," and certainly no criteria that have been approved by medical societies to evaluate causation using a differential diagnosis methodology. Moreover, Wagmeister's experience and expertise are not in any way equivalent to those of the experts in the cases that plaintiffs cite – Wagmeister did not even know of a potential association between Tasigna® and atherosclerosis until he was approached by plaintiffs' attorneys and he has never published on Tasigna® or CML. *See* NPC's Wagmeister Mot. at 8.

***Excluding Evidence of Other Adverse Events.*** NPC has argued in its motions that Rule 702 and *Daubert* and its progeny provide an additional basis for limiting plaintiffs' experts' testimony to the relevant adverse event – stroke. NPC requests that the Court limit plaintiffs' experts' testimony to the same extent that it does other evidence in response to NPC's Motion in Limine, Section II (ECF No. 58). Courts routinely limit evidence unrelated to the alleged injury at issue in the case. *See, e.g., O'Banion v. Owens Corning Fiberglas Corp.*, 968 F.2d 1011, 1013 (10th Cir. 1992) ("evidence of cancer is so prejudicial that in the absence of expert medical testimony that 'a reasonable degree of medical certainty' exists that the plaintiff will develop cancer, such evidence should be excluded"); *Novak v. United States*, 865 F.2d 718, 726 (6th Cir. 1989) (reversing trial court's admission of evidence of other conditions that were different from the one claimed as plaintiff's injury); *Smith v. A.C. & S, Inc.*, 843 F.2d 854, 859 (5th Cir. 1988) (cancer evidence in non-cancer case "is highly inflammatory and understandably incites the passions and fears of most reasonable individuals"); *Mills v. United States*, 764 F.2d 373, 379 (5th Cir. 1985) (warnings evidence "confined to consideration . . . of the particular condition or disease which allegedly caused his injury or death"); *In re Related Asbestos Cases*, 543 F. Supp. 1152, 1160 (N.D. Cal. 1982) (excluding reference to cancer when alleged injury was not cancer).

   ***Testimony Regarding Foreign Regulatory Actions.***  NPC has moved to exclude testimony from plaintiffs' experts regarding foreign labeling and regulatory actions, and requests that the Court limit expert testimony for the reasons stated in its *Daubert* briefing as well as in its briefing on Motion in Limine, Section I.

\*  \*  \*

   NPC requests that the Court grant its *Daubert* motions for the reasons stated in its prior briefing and above.

Dated:  June 11, 2018         Respectfully submitted,

                s/ Michael J. Thomas
                Michael J. Thomas
                 PENNINGTON, P.A.
                 215 South Monroe Street, 2nd Floor
                 Tallahassee, FL 32301
                 Phone: 850-222-3533
                 Fax: 850-222-2126
                 mike@penningtonlaw.com

                Robert E. Johnston (admitted *pro hac vice*)
                (rjohnston@hollingsworthllp.com)
                Andrew L. Reissaus (admitted *pro hac vice*)
                (areissaus@hollingsworthllp.com)
                 HOLLINGSWORTH LLP
                 1350 I Street, NW
                 Washington, DC 20005
                 Phone:  (202) 898-5800
                 Fax:  (202) 682-1639

                *Attorneys for Defendant*
                *Novartis Pharmaceuticals Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 11, 2018, the foregoing was filed with the Clerk of the Court and served in accordance with the Southern District of Florida's Rules on Electronic Service upon the following parties and participants:

      Bryan F. Aylstock, Esq.
      AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
      17 E. Main Street, Suite 200
      Pensacola, Florida 32502
      Miami, FL  33130

      Richard M. Elias, Esq.
      Greg G. Gutzler
      Tamara M. Spicer
      ELIAS GUTZLER SPICER LLC
      130 South Bemiston Avenue, Suite 302
      St. Louis, MO  63105

      James G. Onder
      Evan Murphy
      ONDER LAW
      110 East Lockwood
      St. Louis, MO

                                                  s/ Michael J. Thomas
                                                Michael J. Thomas