UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 2:17-CV-14302-ROSENBERG/MAYNARD

DENNIS MCWILLIAMS,
LORI MCWILLIAMS,

    Plaintiffs,

v.

NOVARTIS AG, *a global healthcare company*,
NOVARTIS PHARMACEUTICALS CORPORATION,
*a Delaware corporation*,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DR. MARK WEISS**

THIS CAUSE is before the Court on Defendant's Motion to Exclude Testimony of Dr. Mark Weiss. DE 59. Dr. Weiss is an oncologist/hematologist that Plaintiffs seek to have offer his opinions that:

(1) Nilotinib (Tasigna) is causally associated with atherosclerotic-related conditions, including accelerated and severe vascular occlusive disease. The plausible mechanisms of action include direct effects on the blood vessels promoting atherosclerosis, inhibition of mechanisms that counteract atherosclerosis, and metabolic effects, including the worsening of cholesterol levels and increasing blood sugar levels.
(2) For patients with pre-existing risk factors for atherosclerotic-related events, including a history of smoking and hypertension, there are safer and better-suited treatment alternatives to nilotinib for a fully informed physician to choose from. It is imperative that physicians who do prescribe nilotinib monitor patients for developing atherosclerotic-related diseases.
(3) The nilotinib U.S. product label in effect during the time of Mr. McWilliams' Tasigna treatment did not appropriately warn of the severe atherosclerosis-related risks associated with the drug.

DE 59-1 at 2. The Court has carefully reviewed Defendant's Motion, DE 59, Plaintiffs' response, DE 67, Defendant's reply, DE 73, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

## I.  FEDERAL RULE OF EVIDENCE 702 AND THE *DAUBERT* STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the establishing its admissibility. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). In determining whether expert testimony and any report prepared by the expert may be admitted, the Court inquires whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993))).

Under *Daubert*, district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *Daubert*, 509 U.S. at 592–93; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–52 (1999). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *McDowell*, 392 F.3d at 1299 (citations omitted).

## II. ANALYSIS

Defendant argues that all three of Dr. Weiss's opinions are inadmissible. Defendant argues that: (1) Plaintiffs have not established the admissibility of Dr. Weiss's first opinion—that Tasigna causes atherosclerosis-related conditions; (2) because Dr. Weiss does not offer an opinion about CML treatment decisions specific to Mr. McWilliams, his second opinion topic is irrelevant and would not assist or aid the jury; and (3) Dr. Weiss should be precluded from testifying about the adequacy of Tasigna's warning because he lacks the necessary qualifications and failed to apply a reliable methodology. DE 59. The Court addresses each of Dr. Weiss's opinions—and Defendant's argument for exclusion—in turn.

### A. Dr. Weiss's First Opinion

Defendant argues that Dr. Weiss's general causation opinion—that Tasigna causes accelerated and severe atherosclerosis-related events—should be excluded because Dr. Weiss "fail[ed] to apply an objective standard for evaluating whether the available data demonstrates a causal relationship between Tasigna and accelerated atherosclerosis." DE 59 at 6. Defendant notes that, unlike Dr. Sonal Singh, Dr. Weiss did not perform a meta-analysis or utilize the Bradford Hill criteria. *Id.* at 6. Defendant argues that Dr. Weiss relies on case reports, which are not reliable causation proof. *Id.* at 9. It also argues that Dr. Weiss relied on studies comparing patients on Gleevec and Tasigna but did not consider that Gleevec may be cardio-protective— that is, the possibility that "there are fewer adverse events in CML patients on Gleevec than in CML patients without TKI therapy." *Id.* Defendant also argues that in the section of his report in

which he discusses the plausible rationale for the mechanism of nilotinib (Tasigna) and progressive atherosclerosis, Dr. Weiss cites a single case report and does not identify other articles that support his hypothesis. *Id.* at 10.

Plaintiff responds that Dr. Singh, not Dr. Weiss, is their primary expert to opine on the statistical significance of the association between Tasigna and cardiovascular events. Plaintiffs "intend to offer Dr. Weiss to explain, as an expert hematologist who is familiar with the mechanisms of action of tyrosine-kinase inhibitors (TKIs) (including Tasigna) what the plausible mechanisms of action are." DE 67 at 4. Plaintiff states that Dr. Weiss relied on "the medical literature [that] describes multiple plausible mechanisms supporting the hypotheses that Tasigna, at a cellular level, causes accelerated atherosclerosis" and on several case reports. *Id.* at 5–6.

The Court agrees with Defendant that Dr. Weiss's report does not explain a methodology that he followed in order to arrive at his first opinion—that Tasigna is causally associated with atherosclerotic-related conditions and that the plausible mechanisms of action include direct effects on the blood vessels promoting atherosclerosis, inhibition of mechanisms that counteract atherosclerosis, and metabolic effects, including the worsening of cholesterol levels and increasing blood sugar levels. In the section of his report explaining how he arrived at his first conclusion, Dr. Weiss cites five reports that he argues lead him to the conclude that nilotinib (Tasigna) is associated with a significantly increased risk of vascular events compared to patients receiving treatment with imatinib (Gleevec). DE 59-1 at 4–6. He did not, however, conduct a meta-analysis or explain why he considered these five reports. The Court recognizes that Dr. Singh, not Dr. Weiss, is Plaintiffs' primary expert regarding the statistical significance of the association between Tasigna and cardiovascular events. However, Dr. Weiss's report does not

4

offer any methodology for how he came to the conclusion that there is an association between Tasigna and cardiovascular events. Accordingly, he cannot opine about such an association.

The second part of Dr. Weiss's first opinion is the mechanism for the association between Tasigna and the cardiovascular events. He states that "[t]he plausible mechanisms of action include direct effects on the blood vessels promoting atherosclerosis, inhibition of mechanisms that counteract atherosclerosis, and metabolic effects, including the worsening of cholesterol levels and increasing blood sugar levels." DE 59-1 at 2. In this section of his report, Dr. Weiss cites a study comparing the impact of nilotinib and imatinib on mice, *id.* at 6, and a case study of a patient who developed a blood flow problem to the leg but had a rapid improvement following the discontinuation of nilotinib, *id.* at 8. This section of the report suffers from the same flaw as the first part of Dr. Weiss's first opinion. It does not offer any methodology for how Dr. Weiss arrived at his opinions. For the Court to perform its "gatekeeping" role under *Daubert*, 509 U.S. at 592–93, there must be some methodology for the Court to review. Because Dr. Weiss's report does not offer a methodology to explain how he arrived at his first opinion, the Court excludes his first opinion.

B. Dr. Weiss's Second Opinion

Defendant argues that Plaintiffs' second opinion that there are better treatment alternatives for patients with pre-existing risk factors for atherosclerotic-related events should be excluded. Defendant states that such general information would not be helpful to the jury without drawing a connection to Mr. McWilliams. DE 59 at 11–13. Plaintiffs respond that Dr. Weiss's "testimony is directly relevant to this case because it will give the jury an important context as to what alternatives were available for Mr. McWilliams, particularly given his predisposing risk factors for atherosclerosis." DE 67 at 7.

The Court notes that Defendant challenges only whether Dr. Weiss's second opinion is relevant and will aid the jury. Federal Rule of Evidence 702 requires that the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." The helpfulness prong of Rule 702 "goes primarily to relevance. The basic standard of relevance . . . is a liberal one, but if an expert opinion does not have a valid scientific connection to the pertinent inquiry it should be excluded because there is no fit." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). Dr. Weiss's testimony regarding the treatment options available is relevant and will provide the necessary context for the jury to understand the alternatives that were available to Mr. McWilliams's prescribing physician. Therefore, this opinion is not excluded.

C. <u>Dr. Weiss's Third Opinion</u>

Defendant argues that Dr. Weiss should not be permitted to testify about the adequacy of Tasigna's warning because "Dr. Weiss admits that he has never been involved with FDA about the labeling of any medication and that he has never reviewed any company's labeling submissions to FDA." DE 59 at 14. Defendant argues that Dr. Weiss has based his opinion on the activities of the regulatory authorities in Canada and that "Dr. Weiss has no relevant expertise and has applied no methodology that would be helpful to the jury in evaluating how a labeling decision made under Canada's regulations is relevant to activities under the United States' own regulatory scheme." *Id.* at 14–15. Plaintiffs respond that Dr. Weiss, a hematologist and oncologist, was the intended audience of the Tasigna warnings and that he "will testify that the label in place during Mr. McWilliams' time on Tasigna did not properly warn of the association between Tasigna and accelerated vascular disease." DE 67 at 7.

The Court agrees with Defendant. Dr. Weiss does not have any expertise in the labeling of medication. Simply being a doctor who is the intended audience of these labels does not make him qualified to opine on the adequacy of the labels. Additionally, Dr. Weiss's report does not explain his methodology for how he arrived at the conclusion that the label was inadequate. His main support for his conclusion comes from the fact that Health Canada requested that Defendant update the Canadian label to warn physicians of the risk of atherosclerosis-related disease. *See* DE 59-1 at 12–13. The fact that a regulatory body in a different country required the label to be updated does not necessarily mean that the label was inadequate at the time Tasigna was prescribed to Mr. McWilliams in June 2011. Accordingly, Dr. Weiss's third opinion that the Tasigna label in effect during the time of Mr. McWilliams' Tasigna treatment did not appropriately warn of the severe atherosclerosis-related risks associated with the drug is excluded.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**

(1) Defendant's Motion to Exclude Testimony of Dr. Mark Weiss [DE 59] is **GRANTED IN PART AND DENIED IN PART;**

(2) The following of Dr. Weiss's opinions are excluded:

   a. Nilotinib (Tasigna) is causally associated with atherosclerotic-related conditions, including accelerated and severe vascular occlusive disease. The plausible mechanisms of action include direct effects on the blood vessels promoting atherosclerosis, inhibition of mechanisms that counteract atherosclerosis, and metabolic effects, including the worsening of cholesterol levels and increasing blood sugar levels.
   b. The nilotinib U.S. product label in effect during the time of Mr. McWilliams' Tasigna treatment did not appropriately warn of the severe atherosclerosis-related risks associated with the drug.

(3) The following of Dr. Weiss's opinions are not excluded:

a. For patients with pre-existing risk factors for atherosclerotic-related events, including a history of smoking and hypertension, there are safer and better-suited treatment alternatives to nilotinib for a fully informed physician to choose from. It is imperative that physicians who do prescribe nilotinib monitor patients for developing atherosclerotic-related diseases.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this <u>9th</u> day of July, 2018.

                                                                                          _____
                                                                                          ROBIN L. ROSENBERG
Copies furnished to:                                              UNITED STATES DISTRICT JUDGE
Counsel of Record